

CHIEF JUSTICE
JAMES T. WORTHEN

CLERK
CATHY S. LUSK

**TWELFTH COURT OF APPEALS**

JUSTICES
SAM GRIFFITH
DIANE DeVASTO

CHIEF STAFF ATTORNEY
MARGARET HUSSEY

Wednesday, April 05, 2006

Mr. William J. Gardner
422 North Green
Suite B
Longview, TX 75601

Mr. Stayton L. Worthington
Coghlan, Crowson, Fitzpatrick, Westbrook
& Worthington, LLP
The Energy Centre, Suite 211
1127 Judson Road
Longview, TX 75606

**RE:** Case Number:               12-04-00172-CV
Trial Court Case Number:   2000-621-A

**Style:** Jimmie D. Redmon and wife Kathy Redmon, Appellants/Cross-Appellees
v.
Valta R. Griffith, Individually and as Representative of the Estate of Ralph E. Griffith,
Deceased, Appellee/Cross-Appellant

Enclosed is a copy of the Opinion issued this date in the above styled and numbered cause.
Also enclosed is a copy of the Court's judgment.

Very truly yours,

CATHY S. LUSK, CLERK

By: *Katrina McClenny*
Katrina McClenny, Chief Deputy Clerk

CC:        Hon. John Ovard
Judge David Scott Brabham
Ms. Barbara Duncan

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JIMMIE D. REDMON* *AND WIFE, KATHY REDMON,* *APPELLANTS/CROSS-APPELLEES,* | § | *APPEAL FROM THE 188TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *VALTA R. GRIFFITH, INDIVIDUALLY* *AND AS REPRESENTATIVE OF THE* *ESTATE OF RALPH E. GRIFFITH,* *DECEASED,* *APPELLEE/CROSS-APPELLANT* | § | *GREGG COUNTY, TEXAS* |

---

## *OPINION*

Jimmie D. Redmon and Kathy Redmon (collectively the "Redmons") appeal the trial court's summary judgment entered in favor of Valta R. Griffith, both individually and as representative of the Estate of Ralph E. Griffith, deceased ("Griffith").[1] The Redmons raise two issues on appeal. The Griffiths raise one issue on appeal. We affirm in part and reverse and remand in part.

## BACKGROUND

G.E.M. Transportation was a trucking company started by Ralph Griffith. By prior agreement, when Ralph Griffith recouped his initial investment, the company was incorporated in

---

[1] Also named as a defendant in this matter is the R.E. and Valta Griffith Living Revocable Trust.

Texas as G.E.M. Transportation, Inc. ("G.E.M.") and twenty-five percent of the corporation's stock was transferred to Jim Redmon, who became operations manager, vice president, and director of G.E.M. Ralph Griffith was president and director of G.E.M. and retained seventy-five percent of the stock in the corporation. Ralph Griffith's wife, Valta, was secretary, treasurer, and director of G.E.M. Jim Redmon's wife, Kathy, also participated in running the business affairs of G.E.M.

In 1999, disputes arose between the Redmons and the Griffiths, and on or about August 11, 1999, Ralph Griffith terminated Jim Redmon's positions with G.E.M.[2] Less than a month later, Kathy Redmon's position at G.E.M. was likewise terminated.

On March 17, 2000, the Redmons, both individually and derivatively on behalf of G.E.M., filed the instant lawsuit against G.E.M. and the Griffiths in various capacities. By their lawsuit, the Redmons sought an accounting and inspection of G.E.M.'s corporate books and records. The Redmons further alleged that the Griffiths, as officers and directors of G.E.M., committed fraud and breached fiduciary duties owed to the Redmons by diverting corporate opportunities, funds, and revenues and by making illegal disbursements of corporate assets for their own personal use and benefit. Moreover, the Redmons sought damages for breach of contract and made a claim for shareholder oppression.

Following Ralph Griffith's death, Valta Griffith put G.E.M. into Chapter 11 bankruptcy on February 9, 2001. The bankruptcy proceeding was converted to a Chapter 7 proceeding on February 13, 2001. Following a suggestion of bankruptcy filed in the trial court on November 7, 2001, all proceedings against G.E.M. at the state level were stayed.

On May 29, 2003, the Redmons, by their second amended petition, abandoned any claims made by them on behalf of G.E.M. derivatively and removed G.E.M. as a defendant in the lawsuit. On December 15, 2003, Griffith filed both a traditional and a no evidence motion for summary judgment. The Redmons responded. Griffith subsequently moved for summary judgment on her counterclaim for conversion. On February 18, 2004, the trial court signed a final judgment ordering that the parties take nothing on their respective claims against one another. This appeal followed.

---

[2] Jim Redmon retained his position as a director of G.E.M.

## STANDARD OF REVIEW

In reviewing a traditional motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985), which are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*See id.*; *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.). For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *see also MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952). The only question is whether or not an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c).

Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g.*, *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c).

3

The rules of civil procedure further authorize a no evidence motion for summary judgment. TEX. R. CIV. P. 166a(i). After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *Id.* The motion must state the elements as to which there is no evidence. *Id.* The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The movant need not produce any proof in support of its no evidence claim. *See Id.*; *see also,* Judge David Hittner and Lynne Liberato, *Summary Judgments in Texas,* 34 HOUS. L. REV. 1303, 1356 (1998). The motion must be specific in alleging a lack of evidence on an essential element of a cause of action, but need not specifically attack the evidentiary components that may prove an element of the cause of action. *See Denton v. Big Spring Hosp. Corp.,* 998 S.W.2d 294, 298 (Tex. App.–Eastland 1999, no pet.). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.,* 988 S.W.2d 316, 316-17 (Tex. App.–Houston [14th Dist.] 1999, no pet.). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

On appeal, we will uphold a no evidence summary judgment only if the summary judgment record reveals no evidence of the challenged element, i.e., (a) there is a complete absence of evidence as to the challenged element; (b) the evidence offered to prove the challenged element is no more than a mere scintilla; (c) the evidence establishes conclusively the opposite of the challenged element; or (d) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove the challenged element. *See Taylor-Made Hose, Inc. v. Wilkerson,* 21

4

S.W.3d 484, 488 (Tex. App.–San Antonio 2000, pet. denied) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362-63 (1960)).

## DISCUSSION

We will consider the Redmons' first and second issues together. In their first issue, the Redmons argue that the trial court improperly granted summary judgment on the basis that they lacked standing. In their second issue, the Redmons argue that the trial court erred in granting summary judgment because they presented sufficient evidence with regard to their various theories of recovery to create a genuine issue of material fact.

### Standing

Standing is a component of subject matter jurisdiction, which we consider under the same standard by which we review subject matter jurisdiction generally. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex. 1993); *see also Myer v. Cuevas,* 119 S.W.3d 830, 833 (Tex. App.–San Antonio 2003, no pet.) (disputes concerning subject matter jurisdiction reviewed de novo). The test for standing requires that there be a real controversy between the parties which will actually be determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex. 1996). Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. *See Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex. 1976). Thus, it follows that a plaintiff who seeks individual redress based on allegations concerning wrongs done to a corporation lacks standing.

Traditionally, a corporate officer owes a fiduciary duty to the shareholders collectively, i.e., the corporation, but he does not occupy a fiduciary relationship with an individual shareholder unless some contract or special relationship exists between them in addition to the corporate relationship. *See Faour v. Faour,* 789 S.W.2d 620, 621–22 (Tex. App–Texarkana 1990, writ denied) (citing *Kaspar v. Thorne,* 755 S.W.2d 151, 155 (Tex. App.–Dallas 1988, no writ); *Schoellkopf v. Pledger,* 739 S.W.2d 914, 918 (Tex. App.–Dallas 1987), *rev'd on other grounds,* 762 S.W.2d 145 (Tex. 1988)). Moreover, a corporate shareholder has no individual cause of action for personal damages caused solely by a wrong done to the corporation. *See Faour,* 789 S.W.2d at 622 (citing *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 221 (Tex. 1942);

5

*Pledger*, 739 S.W.2d at 918). The cause of action for injury to the property of a corporation or for impairment or destruction of its business is vested in the corporation, as distinguished from its shareholders, even though the harm may result indirectly in the loss of earnings to the shareholders. *See Davis*, 168 S.W.2d at 221. The individual shareholders have no separate and independent right of action for wrongs to the corporation that merely result in depreciation in the value of their stock. *Id.*

As a result, to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer. *Faour*, 789 S.W.2d at 622. However, a corporate shareholder may have an individual action for wrongs done to him where the wrongdoer violates a duty arising from a contract or otherwise and owing directly by him to the shareholder. *Id.* Such a principle is not so much an exception to the general rule as it is a recognition that a shareholder may sue for violation of his individual rights regardless of whether the corporation also has a cause of action. *Id.* It is the nature of the wrong, whether directed against the corporation only or against the shareholder personally, not the existence of injury, which determines who may sue. *Id.* (citing *Pledger*, 739 S.W.2d at 918).

Appellate courts have also recognized an individual cause of action for "shareholder oppression" or "oppressive conduct." *See, e.g., Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 699-700 (Tex. App.–Fort Worth 2006, no pet. h.); *Gonzales v. Greyhound Lines, Inc.*, 181 S.W.3d 386, 392 n.5 (Tex. App.–El Paso 2005, no pet.); *Willis v. Donnelly*, 118 S.W.3d 10, 32 n.12 (Tex. App.–Houston [14th Dist.] 2003, no pet.); *Pinnacle Data Services, Inc. v. Gillen*, 104 S.W.3d 188, 192 (Tex. App.–Texarkana 2003, no pet.); *Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.–Houston [1st Dist.] 1999, pet. denied); *Hoggett v. Brown*, 971 S.W.2d 472, 488, n.13 (Tex. App.–Houston [14th Dist.] 1997, pet. denied); *Davis v. Sheerin*, 754 S.W.2d 375, 383 (Tex. App.–Houston [1st Dist.] 1988, writ denied). Oppressive conduct has been defined as follows:

1.  [M]ajority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

2.  [B]urdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the

6

company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*See Willis,* 997 S.W.2d at 801. While oppressive conduct is more easily found in the context of a close corporation, we are aware of no case law expressly limiting it to such a context. *See Davis,* 754 S.W.2d at 381 ("Courts take an especially broad view of the application of oppressive conduct to a closely-held corporation, where oppression may more easily be found."). Moreover, a claim of oppressive conduct can be independently supported by evidence of a variety of conduct.[3] *See id.*

When considering questions of standing, we review the pleadings to determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Myer,* 119 S.W.3d at 833. We resolve any doubt in favor of the plaintiff. *Id.*

## Claims/Causes of Action

We will address the claims and allegations in the Redmons' pleadings one by one. We will first consider whether the Redmons have standing. If we determine that they did have standing to bring a claim, we will then address the propriety of the trial court's grant of summary judgment with regard to that claim.

### Shareholder Oppression[4]

*Standing*

As set forth above, appellate courts in Texas have recognized a cause of action for oppressive conduct. The Redmons have pleaded that they were minority shareholders in G.E.M. with the Griffiths owning a seventy-five percent share of the corporate shares. In their second amended petition, the Redmons have further alleged that certain conduct on the Griffiths' part amounts to shareholder oppression. Specifically, the Redmons allege that the Griffiths have engaged in

---

[3] We note that a no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an *essential* element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Havner,* 953 S.W.2d at 711. Because any one of a variety of activities or conduct can give rise to shareholder oppression, the fact that there may be a lack of evidence to support the existence of one such activity does not defeat the claim so long as there is evidence to support that another such instance of conduct occurred.

[4] The Redmons have raised other claims such as breach of fiduciary duty, breach of contract, and fraud. While the shareholder oppression claim may be based on the same underlying facts, we have analyzed the other claims separately from it.

7

wrongful conduct; have not dealt in the company's affairs fairly to the prejudice of the Griffiths; and have not observed the standards of fair dealing on which each shareholder is entitled to rely. *See Willis,* 997 S.W.2d at 801. The Redmons also allege that the Griffiths maliciously suppressed the payment of dividends owed to them and made improper personal loans to themselves from G.E.M. in addition to paying personal expenses from corporate funds without the approval of the board of directors. Finally, the Redmons allege that the Griffiths employed "squeeze out" techniques such as diverting corporate opportunities, excessive payment of dividends to themselves, and attempts to deprive the Redmons of the fair value of their shares and of the benefits thereof. *See Davis,* 754 S.W.2d at 382. We conclude that the Redmons have made sufficient allegations, which taken as true, would demonstrate a claim for shareholder oppression. We hold that the trial court's grant of summary judgment on the ground that the Redmons lacked standing to proceed on their claim for shareholder oppression was improper.

### *Summary Judgment Evidence*

We next consider whether the Redmons presented sufficient summary judgment evidence to create a genuine issue of material fact with regard to their shareholder oppression claim. Our review of the summary judgment record indicates that there is some evidence that the Griffiths paid personal expenses from corporate funds without the approval of the board of directors. Specifically, in her deposition testimony, Valta Griffith stated that G.E.M. purchased a life insurance policy on Ralph Griffith using corporate funds. Valta Griffith further testified that G.E.M. paid her utility bills every month without authorization by the board of directors. She further stated that G.E.M. paid her credit card bills on at least one occasion without the authorization of the board of directors. In his affidavit, Jim Redmon testified that in Spring 1999, in spite of his efforts, Ralph and Valta Griffith refused him access to certain financial statements prepared by G.E.M.'s CPA, Bob Johnston. Jim Redmon further stated that he continued to seek access to information concerning the financial condition of the company until August 1999, when his position at G.E.M. was terminated.

We conclude that the Redmons presented sufficient evidence to overcome the Griffiths' motion for summary judgment concerning their claim of shareholder oppression. Evidence concerning the use of corporate funds to pay personal expenses combined with evidence that Jim Redmon was denied access to information concerning the financial condition of the corporation

8

sufficiently creates a material fact issue concerning whether there was a lack of probity and fair dealing in the company's affairs to the prejudice of the Redmons or otherwise, a visible departure from the standards of fair dealing, and a violation of fair play on which minority shareholders like the Redmons were entitled to rely. We hold that the trial court incorrectly granted summary judgment on the Redmons claim for shareholder oppression.[5]

### Breach of Fiduciary Duty

*Standing*

We will next consider the Redmons' allegations concerning breach of fiduciary duty.[6] In their second amended petition, the Redmons allege as follows:

C. Breach of Fiduciary Duties

1. [T]he Griffith defendants are fiduciaries in numerous respects. First, as officers and directors of G.E.M., charged with the exclusive handling and management of the financial affairs of the corporation, they are charged with the exercise of the utmost good faith, integrity, and fair dealing in connection with this management. The Griffiths['] actions in diverting corporate opportunities, funds, and revenues, and of making illegal disbursements of corporate assets for their own personal use and benefit, constitute not only violations of their fiduciary duties, but knowing and willful violation of those duties. . . .

2. The acts of the individual Defendants in exercising and engaging in the oppressive and "squeeze-out" tactics outlined in paragraphs L–P of Section V., above, are further acts and omissions in violation of their fiduciary duties as controlling, majority shareholders, officers[,] and directors of G.E.M., against Defendants. . . .

In paragraph VI. (C)(1), the Redmons distinctly allege that the Griffiths violated fiduciary duties they owed as officers and directors of G.E.M. The fiduciary duty an officer or director owes to the corporation is distinguishable from a fiduciary relationship that may exist between majority and minority shareholders or otherwise by contract or other special relationship between the individual

---

[5] We do not reach the issue of whether other allegations of wrongdoing potentially underlying the Redmons' shareholder oppression claim have sufficient evidentiary support in the summary judgment record. *See* n.3.

[6] The existence of a confidential or fiduciary relationship is ordinarily a question of fact, and the issue only becomes a question of law when it is one of no evidence. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992).

parties. *Compare Faour*, 789 S.W.2d at 621–22 *with Willis*, 997 S.W.2d at 801.

We iterate that a cause of action for injury to the property of a corporation or for impairment or destruction of its business is vested in the corporation, as distinguished from its shareholders, *see Davis*, 168 S.W.2d at 221, and that to recover for damages to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer. *See Faour*, 789 S.W.2d at 622. Moreover, in determining who has standing to sue, we must consider the nature of the wrong alleged, not the existence of injury. *Id.* (citing *Pledger*, 739 S.W.2d at 918).

In the instant case, the Redmons abandoned their derivative claim on behalf of G.E.M. Even though the underlying facts supporting their allegations with regard to breach of fiduciary duty may intermingle, in paragraph (C)(1), they have sought a distinct avenue of recovery from the Griffiths based on allegations that they violated their fiduciary duties as officers and directors of G.E.M. Such allegations allege a breach of duty owed to the corporation. As such, since they have not alleged the breach of a legal duty owed to them individually, no cause of action can accrue to their benefit therefrom. *See Nobles*, 533 S.W.2d at 927. Thus, we conclude that the Redmons do not have standing to recover from the Griffiths individually for their alleged breach of fiduciary duty as set forth in paragraph (C)(1).

We next consider the Redmons' allegations in paragraph (C)(2). With the exception of their allegation that the Griffiths violated their fiduciary duties as officers and directors of G.E.M., which are duties owed to the corporation, the Redmons' allegations that the Griffiths violated fiduciary duties as controlling majority shareholders warrant further discussion. A coshareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his coshareholder. *Willis*, 118 S.W.3d at 31 (citing *Hoggett*, 971 S.W.2d at 488). Instead, the existence of such a duty depends on the circumstances. *See Willis*, 118 S.W.3d at 31(citing *Pabich v. Kellar*, 71 S.W.3d 500, 504–06 (Tex. App.–Fort Worth 2002, pet. denied)). For example, a fiduciary duty exists if a confidential relationship exists.[7] *Willis*, 118 S.W.3d at 31. A fiduciary relationship is an extraordinary one and

---

[7] A confidential relationship exists where influence has been acquired and abused and confidence has been reposed and betrayed. *Navistar Int'l Transp. Corp.*, 823 S.W.2d at 594. A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship, as well as

will not be lightly created; the mere fact that one subjectively trusts another does not alone indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required. *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App.–Houston [14th Dist.] 1994, writ denied).

Further, fiduciary relationships may be created by contract, through the repurchase of a shareholder's stock in a closely held corporation, in certain circumstances in which a majority shareholder in a closely held corporation dominates control over the business, and in closely held corporations in which the shareholders operate more as partners than in strict compliance with the corporate form. *Id* at 31–32.

In the case at hand, the Redmons' pleadings allege that a majority-minority shareholder relationship existed between the Redmons and the Griffiths. They further make reference to G.E.M. as a "closely-held corporation"[8] in paragraph V., section P of their pleadings. The Redmons further allege facts indicating a great deal of control over the business exercised by Ralph Griffith. Such allegations combined with allegations in the Redmons' pleadings that the Griffiths engaged in wrongful conduct and a lack of fair dealing with regard to the company's affairs to the prejudice of the Redmons sufficiently alleges a breach of fiduciary duty by way of oppressive conduct.

*Summary Judgment Evidence*

As set forth previously, because there is some evidence creating a material fact issue concerning the Redmons' shareholder oppression claim, we do not reach the issue of whether other allegations of wrongdoing potentially underlying the Redmons' shareholder oppression claim have

---

personal friendship. *Dominguez v. Brackey Enters., Inc.,* 756 S.W.2d 788, 791-92 (Tex. App.–El Paso 1988, writ denied). However, the fact that the relationship has been a cordial one and of long duration does not necessarily constitute a confidential relationship. *Navistar Int'l Transp. Corp.,* 823 S.W.2d at 594; *Hallmark v. Port/Cooper T. Smith Stevedoring Co.,* 907 S.W.2d 586, 592 (Tex. App.–Corpus Christi 1995, no writ).

[8] The Redmons argue in their reply brief that G.E.M. was a close corporation as defined by Texas Business Corporation Act, art. 5.14(L)(b)(2). Yet the definition contained in Article 5.14 is only applicable to a derivative proceeding brought by a shareholder of "a closely held corporation," which may be treated by the court as a direct action brought by the shareholder for his own benefit. *See* TEX. BUS. CORP. ACT art. 5.14(L)(b)(2) (Vernon 2003). Because the definition of a "closely held corporation" in Article 5.14 is limited to that article, it is inapplicable to circumstances involving the creation of fiduciary duties between majority and minority shareholders in close corporations. *Id.* Moreover, Article 5.14(L) indicates that the trial court possesses discretion in this regard when a shareholder has brought a derivative proceeding. Since the Redmons abandoned their derivative claims and never sought to have the trial court confer the benefits set forth in Article 5.14(L) upon them, 5.14(L) is inapplicable and provides them no basis for recovery.

11

sufficient evidentiary support in the summary judgment record. *See* n.3.

## Breach of Contract

### *Standing*

We next consider the Redmons' allegations concerning breach of contract. In their second amended petition, the Redmons allege as follows:

E. Breach of Contract

1.    The actions of Defendants in terminating the employment contracts of Plaintiffs, under the peculiar factual circumstances presented in this case, constitute shareholder oppression and are a breach of the contract of employment which each Plaintiff had with G.E.M.

The possibility exists that the firing of an at-will employee who is a minority shareholder can constitute shareholder oppression. *Cf. Willis,* 997 S.W.2d at 802. In *Willis,* the court elaborated as follows:

> The law empowers the board of directors to manage a corporation (citation omitted). Such power obviously includes the power to discharge employees. Given the broad range of business judgment allowed by law to directors and the fact that Texas is an employment-at-will state, we hold that firing alone is simply not the sort of "burdensome, harsh, or wrongful conduct" or "visible departure from the standards of fair dealing" that may constitute shareholder oppression. Nor were the [appellants'] expectations of continued employment without a contract, "objectively reasonable," under *Davis v. Sheerin,* 754 S.W.2d at 381. Texas law does not recognize a minority shareholder's right to continued employment without an employment contract (citation omitted). All are presumed to know the law. Expectations of continued employment that are contrary to well settled law cannot be considered objectively reasonable. Therefore, we hold that the trial judge erred in rendering judgment for shareholder oppression based solely on the jury's finding of wrongful lock-out.

Here, the Redmons have pleaded that the Griffiths wrongfully terminated their employment contracts, which in light of the circumstances detailed in their pleadings amounted to shareholder oppression. We conclude that the Redmons have made sufficient allegations to demonstrate standing to proceed for wrongful termination within the confines of their shareholder oppression claim.

However, the Redmons further allege that the Griffiths are liable for breach of the contracts of employment which the Redmons had with G.E.M. Privity in contract provides a party with standing to maintain the action. *See, e.g., Interstate Contracting Corp. v. City of Dallas,* 135

12

S.W.3d 605, 618 (Tex. 2004) (citing *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex. 2001) (under Texas law, standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and a real controversy between the parties, which will be actually determined by the judicial declaration sought)). Privity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *See Conquest Drilling Fluids v. Tri-Flo Int'l,* 137 S.W.3d 299, 308 (Tex. App.–Beaumont 2004, no pet.).[9]

Where a corporation enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract. *See Robertson v. Bland,* 517 S.W.2d 676, 678 (Tex. Civ. App.–Houston [1st Dist.] 1974, writ dism'd). Thus, to the extent that the Redmons seek recovery from the Griffiths apart from their shareholder oppression claim for a contract they allege they had with G.E.M., we hold they have not pleaded sufficient facts to establish standing to maintain such an action.

*Summary Judgment Evidence*

As set forth previously, because there is some evidence creating a material fact issue concerning the Redmons' shareholder oppression claim, we do not reach the issue of whether other allegations of wrongdoing potentially underlying the Redmons' shareholder oppression claim have sufficient evidentiary support in the summary judgment record. *See* n.3.

Constructive Fraud

We next consider the Redmons' allegations concerning constructive fraud. In their second amended petition, the Redmons allege as follows:

> With respect to any assets determined in any accounting to properly belong to the corporation, but which are held in the name of the individual Defendants, such assets, having been obtained by Plaintiffs as a result of their breaches of duties and fiduciary duties owed to the corporation, such assets should be declared to be held by

---

[9] Other means of recovery are available for a plaintiff to establish standing to sue for breach of contract. *See, e.g., Interstate Contracting Corp. v. City of Dallas,* 135 S.W.3d at 618 (subcontractor); *Zuniga v. Wooster Ladder Co.,* 119 S.W.3d 856, 862 (Tex. App.–San Antonio 2003, no pet.) (contracting party has standing to enforce contract on behalf of third party beneficiary); *Perry v. Breland,* 16 S.W.3d 182, 187 (Tex. App.–Eastland 2000, pet. denied (agency relationship);*Tex. State Employees Union v. Tex. Workforce Comm'n,* 16 S.W.3d 61, 67–68 (Tex. App.–Austin 2000, no pet.) (third party beneficiary has standing to enforce contract because it steps into the shoes of contracting party), *disapproved on other grounds, Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 n. 4 (Tex. 2004). However, in the case at hand, apart from their allegations concerning shareholder oppression, the Redmons have not alleged facts that would give rise to standing in such instances.

the individual Defendants as constructive trustees for the benefit of the corporation since that [is] the only remedy that will adequately compensate the corporation and Plaintiffs, derivatively, and prevent the unjust enrichment of the said Defendants in violation of their fiduciary duties.

In their brief, the Redmons concede that their claims for accounting and for inspection of corporate books and records are moot. Thus, it follows that to the extent they seek to recover "assets determined in any accounting to properly belong to the corporation, but which are held in the name of the individual Defendants," that claim is likewise moot.

However, a breach of fiduciary duty is a form of constructive fraud. *Welder v. Green,* 985 S.W.2d 170, 175 (Tex. App.–Corpus Christi 1998, pet. denied); *Stum v. Stum,* 845 S.W.2d 407, 415 (Tex. App.–Fort Worth 1992, no writ) (pleadings alleging breach of fiduciary duties were sufficient to allege fraud), *overruled on other grounds, Humphreys v. Meadows,* 938 S.W.2d 750, 752 (Tex. App.–Fort Worth 1996, pet. denied). Therefore, to the extent we have held that the Redmons have standing to raise breach of fiduciary duty, we further hold that they have standing to proceed on a claim of constructive fraud.

### Summary Judgment Evidence

As set forth previously, because there is some evidence creating a material fact issue concerning the Redmons' shareholder oppression claim, we do not reach the issue of whether other allegations of wrongdoing potentially underlying the Redmons' shareholder oppression claim have sufficient evidentiary support in the summary judgment record. *See* n.3.

Fraudulent Transfer

### Standing

We next consider the Redmons' allegations concerning fraudulent transfer. In their second amended petition, the Redmons allege as follows:

The Griffiths have made numerous transfers of assets belonging to them individually to the Trust for the purpose of defrauding the Redmons, whom they believed to be their creditors. These transfers are violative of various provisions of the Texas Uniform Fraudulent Transfer Act as set forth in § 24.001, *et seq.* Texas Business and Commerce Code. The Plaintiffs Redmons request various remedies available under those acts to satisfy their claims.

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the

14

creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with an actual intent to hinder, delay, or defraud any creditor of the debtor. TEX. BUS. & COMM. CODE ANN. § 24.005(a)(1) (Vernon 2002). In determining actual intent, consideration may be given, among other factors, to whether before the transfer was made, the debtor had been sued or threatened with suit. *See* TEX. BUS. & COMM. CODE ANN. § 24.005(b)(4) (Vernon 2002).

In their motion for summary judgment, the Griffiths contended that the Redmons' claim for fraudulent transfer was not ripe as they were not creditors of the Griffiths. Ripeness, like standing, is a threshold issue that implicates subject matter jurisdiction. *See Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.,* 971 S.W.2d 439, 442 (Tex. 1998). However, tort claimants are entitled to file causes of action under the Uniform Fraudulent Transfer Act based upon pending, unliquidated tort claims. *See Blackthorne v. Bellush,* 61 S.W.3d 439, 443–44 (Tex. App.–San Antonio 2001, no pet.); *see also* TEX. BUS. & COMM. CODE ANN. § 24.002(3), (4) (Vernon 2002). In the case at hand, the Redmons have brought their claim for fraudulent transfer in conjunction with their other claims, which include a tort claim for breach of fiduciary duty. *See Douglas v. Aztec Pet. Corp.,* 695 S.W.2d 312, 318 (Tex. App.–Tyler 1985, no writ) (breach of fiduciary duty is a tort). Thus, we hold that the Redmons' fraudulent transfer claim is ripe.

In their motion for summary judgment, the Griffiths further argued that even if the claim was ripe, the Redmons lacked capacity to bring the claim because it belonged to G.E.M. Although couched in terms of capacity, because the ultimate issue concerns whether the Redmons have pleaded that they have suffered a distinct injury caused by the Griffiths, which will be actually determined by the judicial declaration sought, the issue is one of standing.

Here, the Redmons alleged that the Griffiths "have made numerous transfers of assets belonging to them individually to the Trust for the purpose of defrauding the Redmons." Based on our reading of the Redmons' second amended petition, we conclude that they have properly pleaded facts which would entitle them to standing on a claim of fraudulent transfer. They have specifically limited their claim to assets belonging to the Redmons individually that were allegedly transferred to the R.E. and Valta Griffith Living Revocable Trust, which is also a defendant in this matter.

*Summary Judgment Evidence*

15

The aforementioned arguments that relate to standing were the only ones raised in the Griffiths' motion for summary judgment with regard to fraudulent transfer. Although the Griffiths made allegations generally that no evidence existed to support the Redmons' allegations with regard to fraudulent transfer, they failed to specify which elements of fraudulent transfer lacked evidentiary support. *See* TEX. R. CIV. P. 166a(i) (a no evidence motion must state the elements as to which there is no evidence). As such, we have limited our discussion to the Griffiths' jurisdictional arguments presented to the trial court in the Griffiths' motion. For the foregoing reasons, the Redmons' first issue is sustained in part and overruled in part. Furthermore, the Redmons' second issue is sustained.

## TRIAL COURT'S DENIAL OF THE GRIFFITHS' MOTION FOR SUMMARY JUDGMENT

The Griffiths have likewise appealed the trial court's judgment. In their sole issue, the Griffiths argue that the trial court erred in denying their motion for summary judgment on their counterclaim against the Redmons for conversion. In their brief, the Griffiths have not presented much in the way of cogent argument, nor have they cited to any authority in support of their sole issue. *See* TEX. R. APP. P. 38.1(h). Rather, the Griffiths have referred us to their motion for summary judgment on their counterclaims "[f]or further argument." We hold that the Griffins have waived their sole issue by their failure to adequately brief it. *See id.*; *Kang v. Hyundai Corp.,* 992 S.W.2d 499, 503 (Tex. App.–Dallas 1999, no pet.) (failure to cite any authority constitutes a waiver). The Griffiths' sole issue is overruled.

## CONCLUSION

We have held that the Redmons, by their pleadings, have sufficiently demonstrated standing with regard to their claims for (1) shareholder oppression, (2) breach of fiduciary duty by way of shareholder oppression, (3) wrongful termination of their employment within the confines of their shareholder oppression claim, (4) constructive fraud to the extent the claim has not been rendered moot, and (5) fraudulent transfer of the Griffiths' individual assets to the R.E. and Valta Griffith Living Revocable Trust. In this regard, the Redmons' first issue is sustained. We have further held that the trial court correctly determined that the Redmons did not have standing with regard to their

16

claims for (1) breach of fiduciary duty owed by the Griffiths to G.E.M. and (2) breach of contract that the Redmons allegedly had with G.E.M. In this regard, the Redmons' first issue is overruled. We have also held that the trial court incorrectly granted summary judgment on the Redmons' claim for shareholder oppression. Therefore, we sustained the Redmons' second issue. We have further overruled the Griffiths' sole issue.

We *reverse* the trial court's judgment in part and *remand* the portions of this cause concerning (1) shareholder oppression, (2) breach of fiduciary duty by way of shareholder oppression, (3) breach of contract within the confines of the Redmons' shareholder oppression claim, (4) constructive fraud to the extent the claim has not been rendered moot, and (5) fraudulent transfer of the Griffiths' individual assets to the R.E. and Valta Griffith Living Revocable Trust for further proceedings consistent with this opinion. We *affirm* the remainder of the trial court's judgment.

__DIANE DEVASTO__
Justice

Opinion delivered April 5, 2006.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*

(PUBLISH)



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

## JUDGMENT

**APRIL 5, 2006**

## NO. 12-04-00172-CV

### JIMMIE D. REDMON AND WIFE, KATHY REDMON,

Appellant/Cross-Appellees,

V.

### VALTA R. GRIFFITH, INDIVIDUALLY AND AS REPRESENTATIVE
### OF THE ESTATE OF RALPH E. GRIFFITH, DECEASED,

Appellee/Cross-Appellant

---

Appeal from the 188th Judicial District Court
of Gregg County, Texas. (Tr.Ct.No. 2000-621-A)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being inspected, it is the opinion of this court that there was error in the judgment of the court below insofar as the trial court incorrectly granted summary judgment on the Appellants' claim for (1) shareholder oppression (2) breach of fiduciary duty by way of shareholder oppression, (3) breach of contract within the confines of the Redmons' shareholder oppression claim, (4) constructive fraud to the extent the claim has not been rendered moot, and (5) fraudulent transfer of the Griffiths' individual assets to the R.E. and Valta Griffith Living Revocable Trust.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below wherein the trial court incorrectly granted summary judgment on the Appellants' claim for (1) shareholder oppression (2) breach of fiduciary duty by way of shareholder oppression, (3) breach of contract within the confines of the Redmons' shareholder oppression claim, (4)

constructive fraud to the extent the claim has not been rendered moot, and (5) fraudulent transfer of the Griffiths' individual assets to the R.E. and Valta Griffith Living Revocable Trust is **reversed**, and the cause is **remanded** for further proceedings consistent with this opinion. In all other respects the judgment of the trial court is **affirmed**.

It is further ORDERED that all costs in this cause expended, both in this court and the court below be adjudged against the party incurring such cost; and that this decision be certified to the trial court below for observance.

Diane DeVasto, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*