# NO. 12-08-00065-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| **CARL SIEBER,** **APPELLANT** | § | *APPEAL FROM THE 114TH* |
| **V.** | § | *JUDICIAL DISTRICT COURT OF* |
| **JAY CARSON AND BROOKSHIRE GROCERY COMPANY,** **APPELLEES** | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Carl Sieber appeals the trial court's order granting summary judgment in favor of Jay Carson and Brookshire Grocery Company (the "Company"). In three issues, Sieber contends that the trial court erred in granting a summary judgment. We affirm.

### BACKGROUND

In approximately 1986, Sieber became acquainted with Carson. In 1994, Carson approached Sieber about taking Carson's son hunting on Sieber's 165 acre farm in Cherokee County, Texas. Sieber orally agreed to allow Carson and his son to hunt on his farm. About the same time, Sieber, age sixty-seven, began working for the Company.[1] At that time, Carson was employed by the Company and had supervisory authority over Sieber. According to Sieber, his first five years with the Company went smoothly. In 1999, Sieber, without warning, terminated Carson's hunting

---

[1] During his eleven years of employment, Sieber actually worked for Southwest Dairy and Southwest Foods, both of which are owned by the Company.

privileges on his property. Sieber told Carson that he was abusing his hunting privileges by bringing friends and his son's coaches onto Sieber's property to hunt. According to Sieber, Carson stated that this termination was embarrassing to him and said "I'm going to get you."

Sieber alleges that after he terminated Carson's hunting privileges, Carson instigated false charges against him by the Company. Sieber's personnel file included the following incidents, termed "write ups," in chronological order:

1. Failing to report an individual driving up to the front gate to request financial assistance.

2. Interrogating coworkers about the hours the Company had asked them to work.

3. Interjecting himself into a previous late night incident between male and female employees.

4. Accidentally closing the perimeter electronic gate and hitting a vehicle, damaging the vehicle.

5. Reading a newspaper in an inappropriate area on company property during a break.

6. Breaking a gate arm by closing it before a tractor and trailer could clear the security gate.

7. Failing to document temporary workers by filling in the proper paperwork.

8. Damaging a computer with a space heater he had been using in the security guard building where he was working.

Sieber was terminated following the last incident.

Sieber filed suit against Carson and the Company, alleging age discrimination, constructive discharge, intentional infliction of emotion distress, and retaliation. Following discovery, Carson and the Company filed both no evidence and traditional motions for summary judgment. The trial court granted a take nothing summary judgment for Carson and the Company on both the no evidence and traditional summary judgment motions. Sieber timely filed this appeal.

## SUMMARY JUDGMENT

In three issues, Sieber contends that the trial court erred in granting summary judgment in favor of Carson and the Company. His first issue is a generic assignment of error, arguing that the

trial court erred in granting the summary judgment. We will construe Sieber's first issue as being related to his claims of age discrimination and constructive discharge. His second and third issues, respectively, relate to his claims for intentional infliction of emotional distress and retaliation.

## Standard of Review

The movant for traditional summary judgment must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in the nonmovant's favor. ***Nixon v. Mr. Prop. Mgmt. Co.***, 690 S.W.2d 546, 548–49 (Tex. 1985). A movant must negate at least one central element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. ***Redmon v. Griffith***, 202 S.W.3d 225, 232 (Tex. App.–Tyler 2006, pet. denied). Once the movant establishes a right to summary judgment, the burden shifts to the nonmovant to respond and present any issues that would preclude summary judgment. ***Id.*** Evidence is conclusive only if reasonable people could not differ in their conclusions. ***City of Keller v. Wilson***, 168 S.W.3d 802, 816 (Tex. 2005).

A party may also move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); ***Western Invs., Inc. v. Urena***, 162 S.W.3d 547, 550 (Tex. 2005). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. ***Redmon***, 202 S.W.3d at 232 (citing ***Merrell Dow Pharms., Inc. v. Havner***, 953 S.W.2d 706, 711 (Tex. 1997)). This is evidence that would enable reasonable and fair minded jurors to differ in their conclusions. ***Wal-Mart Stores, Inc. v. Spates***, 186 S.W.3d 566, 568 (Tex. 2006).

When, as here, a party moves for both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standard. ***Ford Motor Co. v. Ridgway***, 135 S.W.3d 598, 600 (Tex. 2004). If the no evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See **id.*** at 602.

**Age Discrimination**

As part of his first issue, Sieber contends that he was terminated by the Company because he was seventy-eight years of age. The general rule in Texas has been that, absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, for bad cause, or for no cause at all. *County of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007). However, section 21.051 of the Texas Labor Code, a provision of the Texas Commission on Human Rights Act (the "TCHRA"), prohibits an employer from discharging, or in any other way discriminating against, an employee because of the employee's age. *See* TEX. LAB. CODE ANN. § 21.051 (Vernon 2006); *Claymex Brick and Tile, Inc. v. Garza*, 216 S.W.3d 33, 35 (Tex. App.–San Antonio 2006, no pet.). Age discrimination claims are limited to individuals forty years of age or older. *See* TEX. LAB. CODE ANN. § 21.101 (Vernon 2006). An unlawful employment practice is established by the employee when he demonstrates that age is a motivating factor for his termination. *See* TEX. LAB. CODE ANN. § 21.125(a) (Vernon 2006).

The Company produced summary judgment evidence showing that Sieber was sixty-seven years of age when he was hired in 1994. He was terminated at the age of seventy-eight. There is a presumption that when the same company hires a person forty years of age or older, age discrimination is not involved if that employee is terminated. *See* *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 12 (Tex. App.–Tyler 2000, pet. denied). Sieber produced no evidence to overcome this presumption. Because Sieber did not rebut the presumption that age was not involved in his termination, there was no evidence to support his claim of age discrimination. Accordingly, we overrule that portion of Sieber's first issue regarding his claim of age discrimination.

**Constructive Discharge**

In his first amended petition, Sieber contends that he suffered damages because he was constructively discharged by the Company. Constructive discharge serves as a legal substitute for the discharge element of a prima facie case of discrimination, including age discrimination. *Passons v. Univ. of Tex. at Austin,* 969 S.W.2d 560, 562 (Tex. App.–Austin 1998, no pet.); *Bertrand*, 37 S.W.3d at 8. Constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.–Houston [14th Dist.] 1991, no writ) (*citing* *Shawgo v. Spradlin*, 701 F.2d 470,

481 (5th Cir. 1983), *cert. denied sub nom.*, **Whisenhunt v. Spradlin**, 464 U.S. 965, 104 S. Ct. 404, 78 L. Ed. 2d 345 (1983)).  Constructive discharge, however, is only an element of an age discrimination cause of action.  *See* **Bertrand**, 37 S.W.3d at 8.

Sieber was required to show that he was constructively discharged because of his age. *See* *id.*  As shown above, Sieber failed to produce evidence of an age discrimination cause of action.  Furthermore, he failed to show evidence of constructive discharge because he did not quit his job with the Company.  Instead, the evidence shows that he was terminated.  Because Sieber did not show that he was compelled to resign or produce evidence of an age discrimination cause of action, there was no evidence to support his claim of constructive discharge.  Accordingly, we overrule that portion of Sieber's first issue regarding his claim of constructive discharge.

**Intentional Infliction of Emotional Distress**

In his second issue, Sieber contends that the trial court failed to consider his evidence regarding his claim for intentional infliction of emotional distress by Carson and the Company.  To recover damages for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  **Hoffmann–La Roche, Inc. v. Zeltwanger**, 144 S.W.3d 438, 445 (Tex. 2004).  Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." **Id.** (*quoting* **Twyman v. Twyman**, 855 S.W.2d 619, 621 (Tex. 1993)).  To determine whether certain conduct is extreme and outrageous, we consider the context and the relationship between the parties.  **Richard Rosen, Inc. v. Mendivil**, 225 S.W.3d 181, 192 (Tex. App.–El Paso 2005, pet. denied).

Texas courts have held that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes.  **GTE Sw., Inc. v. Bruce**, 998 S.W.2d 605, 612-13 (Tex. 1999).  "The range of behavior encompassed in 'employment disputes' is broad, and includes, at a minimum, such things as criticism, lack of recognition, and low evaluations, which, although unpleasant and sometimes unfair, are ordinarily expected in the work environment." **Id.** at 613.  Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace,

5

an employee must prove the existence of some conduct that brings his dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct. *Id.* Such extreme conduct exists only in the most unusual circumstances. *Id.* It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous. *Richard Rosen, Inc.*, 225 S.W.3d at 193. Termination of employment alone is not legally sufficient evidence to establish that an employer's conduct was extreme and outrageous. *Sw. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998).

Sieber received "write ups" for actions he took during his employment that the Company did not approve of. These "write ups" were placed in his personnel file and could be considered disciplinary actions by the Company. These actions are part of the expected work environment. *See GTE Sw., Inc.*, 998 S.W.2d at 612-13. Also, termination alone is not evidence of extreme and outrageous conduct. *See Sw. Bell Mobile Sys., Inc.*, 971 S.W.2d at 54. Moreover, Sieber presented no summary judgment evidence regarding actions taken by Carson or the Company that could rise to the level of extreme and outrageous conduct. Because the Company's "write ups" regarding Sieber's actions were not outside the scope of ordinary employment disputes and his termination, alone, could not be extreme and outrageous conduct by the Company, there was no evidence to support his claim for intentional infliction of emotional distress. Accordingly, we overrule Sieber's second issue.

**Retaliation**

In his third issue, Sieber contends the trial court failed to consider his allegations that Carson retaliated against him for a protected activity. In a claim arising from section 21.055 of the TCHRA, the plaintiff must first make a prima facie showing that (1) he engaged in a protected activity; (2) adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). Protected activities consist of (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *See* TEX. LAB. CODE ANN. § 21.055 (Vernon 2006); *Dias*, 214 S.W.3d at 676.

Here, Sieber did not produce evidence that he was involved in any protected activity. His

only contention against Carson was that Carson had "retaliated" against him for denying Carson hunting privileges on his farm. This is not a protected activity. *See* TEX. LAB. CODE ANN. § 21.055; ***Dias***, 214 S.W.3d at 676. Because Sieber did not make a prima facie showing that he was engaged in a protected activity, there was no evidence to support his claim for retaliation. Accordingly, we overrule Sieber's third issue.

### DISPOSITION

The judgment of the trial court is ***affirmed***.


   JAMES T. WORTHEN   
Chief Justice


Opinion delivered September 3, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)

7