Jeannine Eve WILLIS, Individually and as Administratrix of The Estate of Robert Michael Fox, Deceased, Appellant,

v.

Joseph M. BYDALEK and Laura Bydalek, Appellees.

No. 01–97–01323–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 15, 1999.

Harry Herzog, Wesley & Herzog, P.C., for Appellant.

Robert J. Filteau, Filteau, Sullivan, & Georgantas, P.C., Ann E. Knight, Filteau, Sullivan & O'Rourke, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices COHEN and MIRABAL.

## OPINION

MURRY B. COHEN, Justice.

A jury found Willis "wrongfully locked out" appellee Joseph Bydalek from a business in which he was a 49 percent shareholder, valued his stock at $612.50, and assessed punitive damages of $30,000 against Willis individually and $150,000 against her as administratrix of her brother's estate. The trial judge entered judgment for "shareholder oppression" for the value of Joseph Bydalek's stock and remitted punitive damages to $5,000 and $25,000, respectively. We reverse and render judgment that the Bydaleks take nothing.

### Background

In early 1993, Joseph Bydalek and Robert M. Fox, Willis's brother, formed RMF & JB Corporation to buy and run the "Fill–Er–Up Club." The Bydaleks sold their home in Wisconsin, left jobs there, and moved to Huntsville to start the club.

RMF & JB Corporation was not a statutory close corporation, but Joseph Bydalek

and Fox were its only shareholders. Fox owned 51 percent of the stock and was the sole officer and director. Joseph Bydalek owned 49 percent. Each shareholder initially loaned $20,000 to the corporation, and they spent another $6,000 in renovations, much of which the Bydaleks did themselves. Altogether, the Bydaleks loaned $31,000 to the corporation, most of their family's savings.

The shareholders agreed Fox would be "administrator," while Joseph Bydalek would run daily operations. The Bydaleks understood they would run the club for a long time and retire there, if possible.

On July 20, 1993, the club opened, and Fox died in a car accident. Willis, Fox's sister, became administratrix of his estate. Joseph Bydalek continued to run the club, and Laura Bydalek tended bar and kept the books. The corporation never paid dividends. The Bydaleks were salaried, at-will employees. Willis never took a salary.

Relations between the parties soured within five months. For example, in 1993, Willis held a special meeting at which she and two attorneys were elected officers and directors. Joseph said he never knew of the meeting or elections; Willis said Joseph knew and consented. By April 1994, Joseph Bydalek proposed a buy/sell agreement; both parties blamed the other for the agreement's failure.

The corporation's Texas Alcoholic Beverage Commission (TABC) license expired on July 19, 1994, but the renewal application still was not ready the day before. Both parties blamed the other for this problem. Joseph Bydalek claimed Willis told him on July 18th that she was "taking over" the club and it "would never close"; Willis denied this. That same night, Willis had the club's locks changed. The Bydaleks no longer managed the club after that date.

Joseph Bydalek said he was locked out rather than quitting or being fired, and Laura Bydalek believed the lock-out was a firing. A former employee, Herbert Harper, testified (1) Willis told him the locks were changed so that Joseph Bydalek, whom she suspected of stealing and whose management she did not like, could not get in; (2) it was no secret that Willis wanted Joseph Bydalek out; (3) one of Willis's employees said before the lock change, "We're getting rid of Joe Bydalek"; (4) Willis and others celebrated after the lock change because Joseph Bydalek "would no longer be part of the club"; and (5) Willis instructed the club's employees to prevent Joseph Bydalek from taking anything if he returned to the club. Willis and another club employee, Eric Marks, testified (1) the Bydaleks abandoned the club and were never prevented from returning or inspecting records, (2) Willis did not want to get rid of Joseph Bydalek, and (3) no one celebrated after Joseph Bydalek was locked out.

The club lost about $10,000 dollars its first year. It never generated a profit and never paid dividends. Willis said she spent about $41,000 of the estate's money and $18,000 of her own on the club after July 1994. The club stayed open until February 1996, when Willis closed it because it was losing money and the TABC would not renew the license.

In October 1995, the Bydaleks sued Willis for conversion, fiduciary duty breach, violation of temporary injunction, shareholder oppression, and civil conspiracy. The Bydaleks sought actual and punitive damages and a buy-out of their corporate interest. The jury was charged only on conversion and whether Willis "wrongfully locked out" the Bydaleks. After finding no conversion, the jury found (1) Joseph Bydalek was wrongfully locked out of the Fill–Er–Up Club, rather than quitting; (2) Willis acted willfully and maliciously; and (3) the fair value of Joseph Bydalek's shares was $612.50. The jury assessed punitive damages of $30,000 against Willis individually and $150,000 against her as administratrix.

The trial judge entered judgment for "shareholder oppression" for the value of Joseph Bydalek's stock and remitted puni-

tive damages to $5,000 and $25,000, respectively. Willis appeals.

## Does the Verdict Support Shareholder Oppression?

██ Under issue two, Willis argues that, even if equitable remedies besides receivership exist for shareholder oppression, the jury verdict does not support a finding of shareholder oppression.[1] We agree.

██ While what acts were performed is a fact question, the determination of whether those facts constitute oppressive conduct toward a minority shareholder is a question of law for the judge. *Davis v. Sheerin*, 754 S.W.2d 375, 380 (Tex.App.—Houston [1st Dist.] 1988, writ denied). In *Davis*, this Court defined "oppressive conduct" as follows:

1. majority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

2. burdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*Id.* at 381–82. Courts must exercise caution in determining what shows oppressive conduct. *McCauley v. Tom McCauley & Son, Inc.*, 104 N.M. 523, 724 P.2d 232, 237 (1986). The minority shareholder's reasonable expectations must be balanced against the corporation's need to exercise its business judgment and run its business efficiently. *Landstrom v. Shaver*, 561 N.W.2d 1, 8 (S.D.1997). Therefore, despite the existence of the minority-majori-ty fiduciary duty, a corporation's officers and directors are still afforded a rather broad latitude in conducting corporate affairs. *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433, 438 (1980).

The jury was charged on wrongful lock-out and conversion, but found only a wrongful lock-out. Willis contends a finding of wrongful lock-out will not support the judge's conclusion of oppressive conduct because there was no finding Joseph Bydalek was fired. We find this distinction unpersuasive. There was testimony, albeit largely disputed, that Willis wanted Joseph Bydalek out; she told him she was "taking over," then changed the locks; she told employees not to let the Bydaleks remove anything; the Bydaleks no longer managed the club after the lock-out; Laura Bydalek considered the lock-out to be a firing; and Willis continued to run the club for almost two years after the lock-out. With these facts before the jury, we do not find a meaningful distinction between a jury finding of lock-out and firing. The lock-out was plainly a firing. The question remains, however, whether a jury finding of "wrongful lock-out," by itself, will support a judgment based on "shareholder oppression."

Evidence supporting the jury's finding of "wrongful lock-out" included the following. The Bydaleks' only cash benefit from the corporation was their salary. Like Fox and Willis, the Bydaleks put substantial time and money into the club, and they relocated for the venture and put most of their life savings into it. Laura Bydalek testified that, while the club never made a profit, it should have realized one the second year; however, Joseph Bydalek, the most experienced manager, was locked-out after the first year. However, the jury found only a wrongful lock-out. It did not find that Willis suppressed dividends or used corporate funds on personal matters.

---

1. For purposes of this discussion, we assume that equitable remedies besides receivership exist for shareholder oppression. *See Davis v. Sheerin*, 754 S.W.2d 375, 379, 380–81 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (upholding equitable remedy of stock buy-out ordered for shareholder oppression). Therefore, we need not rule on Willis's issue one, which argues that *Davis* was incorrectly decided.

On the contrary, it is undisputed that the club never made a profit or had money to distribute; that Willis never took a salary or dividends; and that Willis spent and lost tens of thousands of dollars of her own and the estate's money. Neither did the jury find any wrong except locking out the Bydaleks, who were at-will employees.[2] Under these circumstances, the lock-out amounted to no more than a firing.

The club lost money every year it operated, including the year the Bydaleks ran it. We afford Willis broad latitude in conducting the club's affairs, balancing her business judgment in the face of four profitless years of operation against the Bydalek's reasonable expectations of participating in the business. *See Masinter*, 262 S.E.2d at 438 (despite minority-majority fiduciary duty, corporate officers and directors have broad latitude in corporate affairs); *Landstrom*, 561 N.W.2d at 8 (minority's reasonable expectations must be balanced against corporation's need to exercise business judgment and run business efficiently). In this light, we hold Willis did not oppress minority shareholder Joseph Bydalek by firing him when (1) the jury found no wrong besides a lock-out, (2) the corporation and Willis, personally, always lost money, both before and after the lock-out, and (3) the Bydaleks were at-will employees.

We distinguish the authority on which the Bydaleks rely. In *Davis*, the majority shareholders conspired to deprive the minority shareholder of his stock and breached their fiduciary duty by wrongfully withholding dividends and wasting corporate funds on personal attorney's fees. 754 S.W.2d at 382. The jury did not find that here. In *Duncan v. Lichtenberger*, the majority shareholder fired the minority shareholders, who were also its officers, but he also stopped informing the minority of corporate actions and withheld corporate dividends from the minority while receiving compensation himself.

671 S.W.2d 948, 951 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Moreover, the majority shareholder breached a fiduciary duty to the minority shareholders. *Id.* at 952. The jury here found no such conduct. In *In re Topper*, the corporation, unlike the present corporation, flourished, but the majority shareholders never paid dividends, and they removed the minority shareholder as an officer and fired him. 107 Misc.2d 25, 433 N.Y.S.2d 359, 361–62 (N.Y.Sup.Ct.1980). In *McCauley*, the corporation could have paid, but did not pay, dividends; the majority shareholders received corporate benefits denied the minority shareholder, whom they falsely accused of wrong; and the corporation's records and books were inaccurately and inequitably kept. 724 P.2d at 235, 238–40. In *Baker v. Commercial Body Builders, Inc.*, the majority shareholder prevented the minority shareholder from reviewing the corporate books, took a salary increase while denying one to the minority shareholder, and removed the minority shareholder as officer and director and ceased notifying him of meetings. 264 Or. 614, 507 P.2d 387, 390–91, 398 (1973). In none of these cases was oppressive conduct found solely for locking out an at-will employee while both the corporation and its majority shareholders constantly lost money.

We are not holding that firing an at-will employee who is a minority shareholder can never, under any circumstances, constitute shareholder oppression; we simply hold that under these particular facts, it does not. The law empowers the board of directors to manage a corporation. Tex. Bus. Corp. Act Ann. art. 2.31 (Vernon Supp.1999). Such power obviously includes the power to discharge employees. Given the broad range of business judgment allowed by law to directors and the fact that Texas is an employment-at-will state, we hold that firing alone is

---

**2.** The Bydaleks alleged claims for conversion, breach of fiduciary duty, conspiracy, shareholder oppression, and temporary injunction violation, but they submitted to the jury only conversion and "wrongful lock-out." The jury found against the Bydaleks on the conversion claim.

simply not the sort of "burdensome, harsh, or wrongful conduct" or "visible departure from the standards of fair dealing" that may constitute shareholder oppression. Nor were the Bydaleks' expectations of continued employment, without a contract, "objectively reasonable," under *Davis v. Sheerin*, 754 S.W.2d at 381. Texas law does not recognize a minority shareholder's right to continued employment without an employment contract. *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985). All are presumed to know the law. Expectations of continued employment that are contrary to well settled law cannot be considered objectively reasonable. Therefore, we hold the trial judge erred in rendering judgment for shareholder oppression based solely on the jury's finding of wrongful lock-out.

We sustain Willis's challenge. Accordingly, we need not reach Willis's remaining challenges to the damages awarded.

### Conclusion

We reverse the trial court's judgment and render judgment that the Bydaleks take nothing.