NO.
12-04-00172-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JIMMIE D. REDMON         §                      APPEAL FROM THE 188TH

AND WIFE, KATHY REDMON,

APPELLANTS/CROSS-APPELLEES,

 

 

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

VALTA R. GRIFFITH,
INDIVIDUALLY

AND AS REPRESENTATIVE
OF THE

ESTATE OF RALPH E.
GRIFFITH,

DECEASED,

APPELLEE/CROSS-APPELLANT            §                      GREGG
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Jimmie D.
Redmon and Kathy Redmon (collectively the “Redmons”) appeal the trial court’s
summary judgment entered in favor of Valta R. Griffith, both individually and
as representative of the Estate of Ralph E. Griffith, deceased (“Griffith”).[1]  The Redmons raise two issues on appeal.  The Griffiths raise one issue on appeal.  We affirm in part and reverse and remand in
part.

 

Background

            G.E.M.
Transportation was a trucking company started by Ralph Griffith.  By prior 
agreement, when Ralph Griffith recouped his initial investment, the
company was incorporated in Texas as G.E.M. Transportation, Inc. (“G.E.M.”) and
twenty-five percent of the corporation’s stock was transferred to Jim Redmon,
who became operations manager, vice president, and director of G.E.M.  Ralph Griffith was president and director of
G.E.M. and retained seventy-five percent of the stock in the corporation.  Ralph Griffith’s wife, Valta, was secretary,
treasurer, and director of G.E.M.  Jim
Redmon’s wife, Kathy, also participated in running the business affairs of
G.E.M.  

            In
1999, disputes arose between the Redmons and the Griffiths, and on or about
August 11, 1999, Ralph Griffith terminated Jim Redmon’s positions with G.E.M.[2]  Less than a month later, Kathy Redmon’s
position at G.E.M. was likewise terminated.

            On
March 17, 2000, the Redmons, both individually and derivatively on behalf of
G.E.M., filed the instant lawsuit against G.E.M. and the Griffiths in various
capacities.  By their lawsuit, the
Redmons sought an accounting and inspection of G.E.M.’s corporate books and
records.  The Redmons further alleged
that the Griffiths, as officers and directors of G.E.M., committed fraud and
breached fiduciary duties owed to the Redmons by diverting corporate
opportunities, funds, and revenues and by making illegal disbursements of
corporate assets for their own personal use and benefit.  Moreover, the Redmons sought damages for
breach of contract and made a claim for shareholder oppression.  

            Following
Ralph Griffith’s death, Valta Griffith put G.E.M. into Chapter 11 bankruptcy on
February 9, 2001.  The bankruptcy
proceeding was converted to a Chapter 7 proceeding on February 13,
2001.  Following a suggestion of
bankruptcy filed in the trial court on November 7, 2001, all proceedings
against G.E.M. at the state level were stayed.

            On
May 29, 2003, the Redmons, by their second amended petition, abandoned any
claims made by them on behalf of G.E.M. derivatively and removed G.E.M. as a
defendant in the lawsuit.  On December
15, 2003, Griffith filed both a traditional and a no evidence motion for
summary judgment.  The Redmons responded.  Griffith subsequently moved for summary
judgment on her counterclaim for conversion. 
On February 18, 2004, the trial court signed a final judgment ordering
that the parties take nothing on their respective claims against one
another.  This appeal followed.

 

Standard of
Review

            In
reviewing a traditional motion for summary judgment, this court must apply the
standards established in Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985), which are as follows:

 

                1.             The movant for summary judgment has
the burden of showing that there is no genuine issue of material fact and that
it is entitled to judgment as a matter of law;

 

                2.             In deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to
the non-movant will be taken as true;

 

                3.             Every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor.

 

 








See id.; May v. Nacogdoches Mem’l
Hosp., 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.).  For a party to prevail on a motion for
summary judgment, he must conclusively establish the absence of any genuine
question of material fact and that he is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c).  A movant must
either negate at least one essential element of the nonmovant's cause of action
or prove all essential elements of an affirmative defense.  See Randall's Food Markets, Inc.
v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); see also MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  Since the burden of proof is on the movant,
and all doubts about the existence of a genuine issue of material fact are
resolved against the movant, we must view the evidence and its reasonable
inferences in the light most favorable to the nonmovant.  See Great Am.  Reserve Ins. Co. v. San Antonio Plumbing
Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  We are not required to ascertain the
credibility of affiants or to determine the weight of evidence in the
affidavits, depositions, exhibits, and other summary judgment proof.   See Gulbenkian v. Penn, 151
Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952). 
The only question is whether or not an issue of material fact is
presented.  See Tex. R. Civ. P. 166a(c).

            Once
the movant has established a right to summary judgment, the nonmovant has the
burden to respond to the motion for summary judgment and present to the trial
court any issues that would preclude summary judgment.  See, e.g., City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  All theories in support of or in opposition
to a motion for summary judgment must be presented in writing to the trial
court.  See Tex. R. Civ. P. 166a(c).

            The
rules of civil procedure further authorize a no evidence motion for summary
judgment.  Tex. R. Civ. P. 166a(i). 
After adequate time for discovery, a party without presenting summary
judgment evidence may move for summary judgment on the ground that there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  Id.  The motion must state the elements as to
which there is no evidence.  Id.  The court must grant the motion unless the
respondent produces summary judgment evidence raising a genuine issue of
material fact.  Id.  The movant need not produce any proof in
support of its no evidence claim.  See
Id.; see also, Judge David Hittner and Lynne Liberato, Summary
Judgments in Texas, 34 Hous. L. Rev.
1303, 1356 (1998).  The motion must be
specific in alleging a lack of evidence on an essential element of a cause of
action, but need not specifically attack the evidentiary components that may
prove an element of the cause of action. 
See Denton v. Big Spring Hosp. Corp., 998 S.W.2d 294, 298
(Tex. App.–Eastland 1999, no pet.).  Once
a no evidence motion has been filed in accordance with Rule 166a(i), the burden
shifts to the nonmovant to bring forth evidence that raises a fact issue on the
challenged evidence.  See Macias v.
Fiesta Mart, Inc., 988 S.W.2d 316, 316-17 (Tex. App.–Houston [14th
Dist.] 1999, no pet.).  A no evidence
motion is properly granted if the nonmovant fails to bring forth more than a
scintilla of probative evidence to raise a genuine issue of material fact as to
an essential element of the nonmovant’s claim on which the nonmovant would have
the burden of proof at trial.  See
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  If the evidence supporting a
finding rises to a level that would enable reasonable, fair minded persons to
differ in their conclusions, then more than a scintilla of evidence
exists.  See Havner, 953
S.W.2d at 711.  Less than a scintilla of
evidence exists when the evidence is so weak as to do no more than create a
mere surmise or suspicion of a fact, and the legal effect is that there is no
evidence.  See Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983).

            On
appeal, we will uphold a no evidence summary judgment only if the summary
judgment record reveals no evidence of the challenged element, i.e., (a) there
is a complete absence of evidence as to the challenged element; (b) the
evidence offered to prove the challenged element is no more than a mere scintilla;
(c) the evidence establishes conclusively the opposite of the challenged
element; or (d) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove the challenged element.  See Taylor-Made Hose, Inc. v. Wilkerson,
21 S.W.3d 484, 488 (Tex. App.–San Antonio 2000, pet. denied) (citing
Robert W. Calvert, “No Evidence” and “Insufficient Evidence” Points of
Error, 38 Tex. L. Rev. 361,
362-63 (1960)). 

 

Discussion

            We
will consider the Redmons’ first and second issues together.  In their first issue, the Redmons argue that
the trial court improperly granted summary judgment on the basis that they
lacked standing.  In their second issue,
the Redmons argue that the trial court erred in granting summary judgment because
they presented sufficient evidence with regard to their various theories of
recovery to create a genuine issue of material fact.          

Standing

            Standing
is a component of subject matter jurisdiction, which we consider under the same
standard by which we review subject matter jurisdiction generally.  See Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 445–46 (Tex. 1993); see
also Myer v. Cuevas, 119 S.W.3d 830, 
833 (Tex. App.–San Antonio 2003, no pet.) (disputes concerning subject
matter jurisdiction reviewed de novo).  The test for standing requires that there be a
real controversy between the parties which will actually be determined by the
judicial declaration sought.  See Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex.
1996). Without a breach of a legal right belonging to the plaintiff, no cause
of action can accrue to his benefit.  See
Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976).  Thus, it follows that a plaintiff who seeks
individual redress based on allegations concerning wrongs done to a corporation
lacks standing.

            Traditionally,
a corporate officer owes a fiduciary duty to the shareholders collectively,
i.e., the corporation, but he does not occupy a fiduciary relationship with an
individual shareholder unless some contract or special relationship exists
between them in addition to the corporate relationship.  See Faour v. Faour, 789 S.W.2d
620, 621–22 (Tex. App–Texarkana 1990, writ denied) (citing Kaspar v.
Thorne, 755 S.W.2d 151, 155 (Tex. App.–Dallas 1988, no writ); Schoellkopf
v. Pledger, 739 S.W.2d 914, 918 (Tex. App.–Dallas 1987), rev’d on
other grounds, 762 S.W.2d 145 (Tex. 1988)). 
Moreover, a corporate shareholder has no individual cause of action for
personal damages caused solely by a wrong done to the corporation.  See Faour, 789 S.W.2d at 622
(citing Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168
S.W.2d 216, 221 (Tex. 1942); Pledger, 739 S.W.2d at 918).  The cause of action for injury to the
property of a corporation or for impairment or destruction of its business is
vested in the corporation, as distinguished from its shareholders, even though
the harm may result indirectly in the loss of earnings to the
shareholders.  See Davis, 168
S.W.2d at 221.  The individual shareholders
have no separate and independent right of action for wrongs to the corporation
that merely result in depreciation in the value of their stock.  Id.

            As
a result, to recover for wrongs done to the corporation, the shareholder must
bring the suit derivatively  in the name
of the corporation so that each shareholder will be made whole if the
corporation obtains compensation from the wrongdoer.  Faour, 789 S.W.2d at 622.  However, a corporate shareholder may have an
individual action for wrongs done to him where the wrongdoer violates a duty
arising from a contract or otherwise and owing directly by him to the
shareholder.  Id.  Such a principle is not so much an
exception to the general rule as it is a recognition that a shareholder may sue
for violation of his individual rights regardless of whether the corporation
also has a cause of action.  Id.  It is the nature of the wrong,
whether directed against the corporation only or against the shareholder
personally, not the existence of injury, which determines who may sue.  Id. (citing Pledger, 739
S.W.2d at 918).

            Appellate
courts have also recognized an individual cause of action for “shareholder
oppression” or “oppressive conduct.”  See,
e.g., Cotten v. Weatherford Bancshares, Inc., No. 2-03-341-CV, 2006
WL 300624, at *6 (Tex. App.–Fort Worth Feb. 9, 2006, no pet. h.); Gonzales
v. Greyhound Lines, Inc., 181 S.W.3d 386, 392 n.5 (Tex. App.–El Paso
2005, no pet.); Willis v. Donnelly, 118 S.W.3d 10, 32 n.12 (Tex.
App.–Houston [14th Dist.] 2003, no pet.); Pinnacle Data Services, Inc. v.
Gillen, 104 S.W.3d 188, 192 (Tex. App.–Texarkana 2003, no pet.); Willis
v. Bydalek, 997 S.W.2d 798, 801 (Tex. App–Houston [1st Dist.] 1999,
pet. denied); Hoggett v. Brown, 971 S.W.2d 472, 488, n.13
(Tex. App.–Houston [14th Dist.] 1997, pet. denied); Davis v. Sheerin, 754
S.W.2d 375, 383 (Tex. App–Houston 1988, writ denied).  Oppressive conduct has been defined as
follows:

 

            1.             [M]ajority
shareholders’ conduct that substantially defeats the minority’s expectations
that, objectively viewed, were both reasonable under the circumstances and
central to the minority shareholder’s decision to join the venture; or

 

                2.             [B]urdensome, harsh, or wrongful
conduct; a lack of probity and fair dealing in the company’s affairs to the
prejudice of some members; or a visible departure from the standards of fair
dealing and a violation of fair play on which each shareholder is entitled to
rely.

 

 

See Willis, 997 S.W.2d at 801.  While oppressive conduct is more easily found
in the context of a close corporation, we are aware of no case law expressly
limiting it to such a context.  See Davis,
 754 S.W.2d at 381 (“Courts take
an especially broad view of the application of oppressive conduct to a
closely-held corporation, where oppression may more easily be found.”).  Moreover, a claim of oppressive conduct can
be independently supported by evidence of a variety of conduct.[3]  See id.

            When
considering questions of standing, we review the pleadings to determine whether
the plaintiff has alleged facts that affirmatively demonstrate the court’s
jurisdiction.  See Myer, 119
S.W.3d at 833.  We resolve any doubt in
favor of the plaintiff.  Id.  

Claims/Causes of Action

            We
will address the claims and allegations in the Redmons’ pleadings one by
one.  We will first consider whether the
Redmons have standing.  If we determine
that they did have standing to bring a claim, we will then address the
propriety of the trial court’s grant of summary judgment with regard to that
claim.

            Shareholder
Oppression[4]

                        Standing

            As
set forth above, appellate courts in Texas have recognized a cause of action
for oppressive conduct.  The Redmons have
pleaded that they were minority shareholders in G.E.M. with the Griffiths
owning a seventy-five percent share of the corporate shares.  In their second amended petition, the Redmons
have further alleged that certain conduct on the Griffiths’ part amounts to shareholder
oppression.  Specifically, the Redmons
allege that the Griffiths have engaged in wrongful conduct; have not dealt in
the company’s affairs fairly to the prejudice of the Griffiths; and have not
observed the standards of fair dealing on which each shareholder is entitled to
rely.  See Willis, 997 S.W.2d at 801. 
The Redmons also allege that the Griffiths maliciously suppressed the
payment of dividends owed to them and made improper personal loans to
themselves from G.E.M. in addition to paying personal expenses from corporate
funds without the approval of the board of directors.  Finally, the Redmons allege that the
Griffiths employed “squeeze out” techniques such as diverting corporate
opportunities, excessive payment of dividends to themselves, and attempts to
deprive the Redmons of the fair value of their shares and of the benefits
thereof.  See Davis, 754
S.W.2d at 382.  We conclude that the
Redmons have made sufficient allegations, which taken as true, would
demonstrate a claim for shareholder oppression. We hold that the trial court’s
grant of summary judgment on the ground that the Redmons lacked standing to
proceed on their claim for shareholder oppression was improper.

                        Summary
Judgment Evidence

            We
next consider whether the Redmons presented sufficient summary judgment
evidence to create a genuine issue of material fact with regard to their
shareholder oppression claim.  Our review
of the summary judgment record indicates that there is some evidence that the
Griffiths paid personal expenses from corporate funds without the approval of
the board of directors.  Specifically, in
her deposition testimony, Valta Griffith stated that G.E.M. purchased a life
insurance policy on Ralph Griffith using corporate funds.  Valta Griffith further testified that G.E.M.
paid her utility bills every month without authorization by the board of
directors.  She further stated that
G.E.M. paid her credit card bills on at least one occasion without the
authorization of the board of directors. 
In his affidavit, Jim Redmon testified that in Spring 1999, in spite of
his efforts, Ralph and Valta Griffith refused him access to certain financial
statements prepared by G.E.M.’s CPA, Bob Johnston.  Jim Redmon further stated that he continued
to seek access to information concerning the financial condition of the company
until August 1999, when his position at G.E.M. was terminated.  

            We
conclude that the Redmons presented sufficient evidence to overcome the
Griffiths’ motion for summary judgment concerning their claim of shareholder
oppression.  Evidence concerning the use
of corporate funds to pay personal expenses combined with evidence that Jim
Redmon was denied access to information concerning the financial condition of
the corporation sufficiently creates a material fact issue concerning whether
there was a lack of probity and fair dealing in the company’s affairs to the
prejudice of the Redmons or otherwise, a visible departure from the standards
of fair dealing, and a violation of fair play on which minority shareholders
like the Redmons were entitled to rely. 
We hold that the trial court incorrectly granted summary judgment on the
Redmons claim for shareholder oppression.[5]

            Breach
of Fiduciary Duty

                        Standing

            We
will next consider the Redmons’ allegations concerning breach of fiduciary
duty.[6]  In their second amended petition, the Redmons
allege as follows:

 

            C.  Breach of Fiduciary Duties

 

                1.             [T]he Griffith defendants are
fiduciaries in numerous respects.  First,
as officers and directors of G.E.M., charged with the exclusive handling and
management of the financial affairs of the corporation, they are charged with
the exercise of the utmost good faith, integrity, and fair dealing in
connection with this management.  The
Griffiths[’] actions in diverting corporate opportunities, funds, and revenues,
and of making illegal disbursements of corporate assets for their own personal
use and benefit, constitute not only violations of their fiduciary duties, but
knowing and willful violation of those duties. . . .

                

                2.             The acts of the individual
Defendants in exercising and engaging in the oppressive and “squeeze-out”
tactics outlined in paragraphs L–P of Section V., above, are further acts and
omissions in violation of their fiduciary duties as controlling, majority shareholders,
officers[,] and directors of G.E.M., against Defendants. . . . 

 

 

In paragraph VI. (C)(1), the Redmons
distinctly allege that the Griffiths violated fiduciary duties they owed as
officers and directors of G.E.M.  The
fiduciary duty an officer or director owes to the corporation is
distinguishable from a fiduciary relationship that may exist between majority
and minority shareholders or otherwise by contract or other special
relationship between the individual parties.  Compare Faour, 789 S.W.2d at
621–22 with Willis, 997 S.W.2d at 801.

            We
iterate that a cause of action for injury to the property of a corporation or
for impairment or destruction of its business is vested in the corporation, as
distinguished from its shareholders, see Davis, 168 S.W.2d at
221, and that to recover for damages to the corporation, the shareholder must
bring the suit derivatively  in the name
of the corporation so that each shareholder will be made whole if the
corporation obtains compensation from the wrongdoer.  See Faour, 789 S.W.2d at
622.  Moreover, in determining who has
standing to sue, we must consider the nature of the wrong alleged, not the
existence of injury.  Id.
(citing Pledger, 739 S.W.2d at 918). 

 
          In the instant case, the
Redmons abandoned their derivative claim on behalf of G.E.M.  Even though the underlying facts supporting
their allegations with regard to breach of fiduciary duty may intermingle, in
paragraph (C)(1), they have sought a distinct avenue of recovery from the
Griffiths based on allegations that they violated their fiduciary duties as
officers and directors of G.E.M.  Such
allegations allege a breach of duty owed to the corporation.  As such, since they have not alleged the
breach of a legal duty owed to them individually, no cause of action can accrue
to their benefit therefrom.  See Nobles,
533 S.W.2d at 927.  Thus, we
conclude that the Redmons do not have standing to recover from the Griffiths
individually for their alleged breach of fiduciary duty as set forth in
paragraph (C)(1).

            We
next consider the Redmons’ allegations in paragraph (C)(2).  With the exception of their allegation that the Griffiths
violated their fiduciary duties as officers and directors of G.E.M., which are
duties owed to the corporation, the Redmons’ allegations that the Griffiths
violated fiduciary duties as controlling majority shareholders warrant further
discussion.  A coshareholder in a closely
held corporation does not as a matter of law owe a fiduciary duty to his coshareholder.  Willis, 118 S.W.3d at 31 (citing
Hoggett, 971 S.W.2d at 488). 
Instead, the existence of such a duty depends on the circumstances.  See Willis, 118 S.W.3d at
31(citing Pabich v. Kellar, 71 S.W.3d 500, 504–06 (Tex. App.–Fort
Worth 2002, pet. denied)).  For example,
a fiduciary duty exists if a confidential relationship exists.[7]
 Willis, 118 S.W.3d at
31.  A fiduciary relationship is an
extraordinary one and will not be lightly created; the mere fact that one
subjectively trusts another does not alone indicate that confidence is placed
in another in the sense demanded by fiduciary relationships because something
apart from the transaction between the parties is required. Kline v.
O'Quinn, 874 S.W.2d 776, 786 (Tex. App.–Houston [14th Dist.] 1994, writ
denied).

            Further,
fiduciary relationships may be created by contract, through the repurchase of a
shareholder’s stock in a closely held corporation, in certain circumstances in
which a majority shareholder in a closely held corporation dominates control
over the business, and in closely held corporations in which the shareholders
operate more as partners than in strict compliance with the corporate form.  Id at 31–32.

            In
the case at hand, the Redmons’ pleadings allege that a majority-minority
shareholder relationship existed between the Redmons and the Griffiths.  They further make reference to G.E.M. as a “closely-held
corporation”[8] in paragraph V., section P of their pleadings. The
Redmons further allege facts indicating a great deal of control over the
business exercised by Ralph Griffith. 
Such allegations combined with allegations in the Redmons’ pleadings
that the Griffiths engaged in wrongful conduct and a lack of fair dealing with
regard to the company’s affairs to the prejudice of the Redmons sufficiently
alleges a breach of fiduciary duty by way of oppressive conduct. 

                        Summary
Judgment Evidence

            As
set forth previously, because there is some evidence creating a material fact
issue concerning the Redmons’ shareholder oppression claim, we do not reach the
issue of whether other allegations of wrongdoing potentially underlying the
Redmons’ shareholder oppression claim have sufficient evidentiary support in
the summary judgment record.  See n.3.

            Breach
of Contract

                        Standing

            We
next consider the Redmons’ allegations concerning breach of contract.  In their second amended petition, the Redmons
allege as follows:

 

            E.  Breach of Contract

                

                1.             The actions of Defendants in
terminating the employment contracts of Plaintiffs, under the peculiar factual
circumstances presented in this case, constitute shareholder oppression and are
a breach of the contract of employment which each Plaintiff had with G.E.M.

 

 

            The
possibility exists that the firing of an at-will employee who is a minority
shareholder can constitute shareholder oppression.  Cf. Willis, 997 S.W.2d at
802.  In Willis, the court
elaborated as follows:

 

The law empowers the
board of directors to manage a corporation (citation omitted).  Such power obviously includes the power to
discharge employees.  Given the broad
range of business judgment allowed by law to directors and the fact that Texas
is an employment-at-will state, we hold that firing alone is simply not the
sort of “burdensome, harsh, or wrongful conduct” or “visible departure from the
standards of fair dealing” that may constitute shareholder oppression.  Nor were the [appellants’] expectations of
continued employment without a contract, “objectively reasonable,” under Davis
v. Sheerin, 754 S.W.2d at 381. 
Texas law does not recognize a minority shareholder’s right to continued
employment without an employment contract (citation omitted).  All are presumed to know the law.  Expectations of continued employment that are
contrary to well settled law cannot be considered objectively reasonable.  Therefore, we hold that the trial judge erred
in rendering judgment for shareholder oppression based solely on the jury’s
finding of wrongful lock-out.

 

 

                Here, the Redmons have pleaded that the Griffiths wrongfully
terminated their employment contracts, which in light of the circumstances
detailed in their pleadings amounted to shareholder oppression.  We conclude that the Redmons have made
sufficient allegations to demonstrate standing to proceed for wrongful
termination within the confines of their shareholder oppression claim. 

            However,
the Redmons further allege that the Griffiths are liable for breach of the
contracts of employment which the Redmons had with G.E.M.  Privity in contract provides a party with
standing to maintain the action.  See,
e.g., Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d
605, 618 (Tex. 2004) (citing Brown v. Todd, 53 S.W.3d 297, 305
(Tex. 2001) (under Texas law, standing limits subject matter jurisdiction to
cases involving a distinct injury to the plaintiff and a real controversy
between the parties, which will be actually determined by the judicial
declaration sought)).  Privity is
established by proving that the defendant was a party to an enforceable
contract with either the plaintiff or a party who assigned its cause of action
to the plaintiff.  See Conquest
Drilling Fluids v. Tri-Flo Int’l, 137 S.W.3d 299, 308 (Tex. App.–Beaumont
2004, no pet.).[9]

            Where
a corporation enters into a contract, the officer’s signature on the contract,
with or without a designation as to his representative capacity, does not
render him personally liable under the contract.  See Robertson v. Bland, 517
S.W.2d 676, 678 (Tex. Civ. App.–Houston [1st Dist.] 1974, writ dism’d).  Thus, to the extent that the Redmons seek
recovery from the Griffiths apart from their shareholder oppression claim for a
contract they allege they had with G.E.M., we hold they have not pleaded
sufficient facts to establish standing to maintain such an action.

                        Summary
Judgment Evidence

            As
set forth previously, because there is some evidence creating a material fact
issue concerning the Redmons’ shareholder oppression claim, we do not reach the
issue of whether other allegations of wrongdoing potentially underlying the
Redmons’ shareholder oppression claim have sufficient evidentiary support in
the summary judgment record.  See n.3.               

            Constructive Fraud

            We
next consider the Redmons’ allegations concerning constructive fraud.  In their second amended petition, the Redmons
allege as follows:

 

With respect to
any assets determined in any accounting to properly belong to the corporation,
but which are held in the name of the individual Defendants, such assets,
having been obtained by Plaintiffs as a result of their breaches of duties and
fiduciary duties owed to the corporation, such assets should be declared to be
held by the individual Defendants as constructive trustees for the benefit of
the corporation since that [is] the only remedy that will adequately compensate
the corporation and Plaintiffs, derivatively, and prevent the unjust enrichment
of the said Defendants in violation of their fiduciary duties.

 

 

In their brief, the Redmons concede
that their claims for accounting and for inspection of corporate books and
records are moot.  Thus, it follows that
to the extent they seek to recover “assets determined in any accounting to
properly belong to the corporation, but which are held in the name of the
individual Defendants,” that claim is likewise moot.

            However,
a breach of fiduciary duty is a form of constructive fraud.  Welder v. Green, 985 S.W.2d
170, 175 (Tex. App.–Corpus Christi 1998, pet. denied); Stum v. Stum, 845
S.W.2d 407, 415 (Tex. App.–Fort Worth 1992, no writ) (pleadings alleging breach
of fiduciary duties were sufficient to allege fraud), overruled on other
grounds, Humphreys v. Meadows, 938 S.W.2d 750, 752 (Tex. App.–Fort
Worth 1996, pet. denied).  Therefore, to
the extent we have held that the Redmons have standing to raise breach of
fiduciary duty, we further hold that they have standing to proceed on a claim
of constructive fraud.

                        Summary
Judgment Evidence

            As
set forth previously, because there is some evidence creating a material fact
issue concerning the Redmons’ shareholder oppression claim, we do not reach the
issue of whether other allegations of wrongdoing potentially underlying the
Redmons’ shareholder oppression claim have sufficient evidentiary support in
the summary judgment record.  See n.3.

            Fraudulent
Transfer

                        Standing

            We
next consider the Redmons’ allegations concerning fraudulent transfer.  In their second amended petition, the Redmons
allege as follows:

 

The Griffiths have
made numerous transfers of assets belonging to them individually to the Trust
for the purpose of defrauding the Redmons, whom they believed to be their
creditors.  These transfers are violative
of various provisions of the Texas Uniform Fraudulent Transfer Act as set forth
in § 24.001, et seq. Texas Business and Commerce Code.  The Plaintiffs Redmons request various
remedies available under those acts to satisfy their claims.

 

 

            A
transfer made or obligation incurred by a debtor is fraudulent as to a
creditor, whether the creditor’s claim arose before or within a reasonable time
after the transfer was made or the obligation was incurred, if the debtor made
the transfer or incurred the obligation with an actual intent to hinder, delay,
or defraud any creditor of the debtor.  Tex. Bus. & Comm. Code Ann. §
24.005(a)(1) (Vernon 2002).  In
determining actual intent, consideration may be given, among other factors, to
whether before the transfer was made, the debtor had been sued or threatened
with suit.  See Tex. Bus. & Comm. Code Ann. §
24.005(b)(4) (Vernon 2002).

            In
their motion for summary judgment, the Griffiths contended that the Redmons’
claim for fraudulent transfer was not ripe as they were not creditors of the
Griffiths.  Ripeness, like standing, is a
threshold issue that implicates subject matter jurisdiction.  See Patterson v. Planned Parenthood of
Houston & Southeast Tex., Inc., 971 S.W.2d 439, 442 (Tex.
1998).  However, tort claimants are
entitled to file causes of action under the Uniform Fraudulent Transfer Act
based upon pending, unliquidated tort claims. 
See Blackthorne v. Bellush, 61 S.W.3d 439, 443–44 (Tex.
App.–San Antonio 2001, no pet.); see also Tex. Bus. & Comm. Code Ann. § 24.002(3), (4) (Vernon
2002).  In the case at hand, the Redmons
have brought their claim for fraudulent transfer in conjunction with their
other claims, which include a tort claim for breach of fiduciary duty.  See Douglas v. Aztec Pet. Corp., 695
S.W.2d 312, 318 (Tex. App.–Tyler 1985, no writ) (breach of fiduciary duty is a
tort).  Thus, we hold that the Redmons’
fraudulent transfer claim is ripe.

            In
their motion for summary judgment, the Griffiths further argued that even if
the claim was ripe, the Redmons lacked capacity to bring the claim because it
belonged to G.E.M.  Although couched in
terms of capacity, because the ultimate issue concerns whether the Redmons have
pleaded that they have suffered a distinct injury caused by the Griffiths,
which will be actually determined by the judicial declaration sought, the issue
is one of standing.

            Here,
the Redmons alleged that the Griffiths “have made numerous transfers of assets
belonging to them individually to the Trust for the purpose of defrauding the
Redmons.” Based on our reading of the Redmons’ second amended petition, we
conclude that they have properly pleaded facts which would entitle them to
standing on a claim of fraudulent transfer. 
They have specifically limited their claim to assets belonging to the
Redmons individually that were allegedly transferred to the R.E. and Valta
Griffith Living Revocable Trust, which is also a defendant in this matter.

                        Summary
Judgment Evidence

            The
aforementioned arguments that relate to standing were the only ones raised in
the Griffiths’ motion for summary judgment with regard to fraudulent
transfer.  Although the Griffiths made
allegations generally that no evidence existed to support the Redmons’
allegations with regard to fraudulent transfer, they failed to specify which
elements of fraudulent transfer lacked evidentiary support.  See Tex.
R. Civ. P. 166a(i) (a no evidence motion must state the elements as to
which there is no evidence).  As such, we
have limited our discussion to the Griffiths’ jurisdictional arguments
presented to the trial court in the Griffiths’ motion.  For the foregoing reasons, the Redmons’ first
issue is sustained in part and overruled in part.  Furthermore, the Redmons’ second issue is
sustained.

 

Trial Court’s
Denial of the Griffiths’ Motion for Summary Judgment

            The
Griffiths have likewise appealed the trial court’s judgment.  In their sole issue, the Griffiths argue that
the trial court erred in denying their motion for summary judgment on their
counterclaim against the Redmons for conversion.  In their brief, the Griffiths have not
presented much in the way of cogent argument, nor have they cited to any
authority in support of their sole issue. 
See Tex. R. App. P.
38.1(h).  Rather, the Griffiths have
referred us to their motion for summary judgment on their counterclaims “[f]or
further argument.”  We hold that the
Griffins have waived their sole issue by their failure to adequately brief
it.  See id.; Kang v.
Hyundai Corp., 992 S.W.2d 499, 503 (Tex. App.–Dallas 1999, no pet.)
(failure to cite any authority constitutes a waiver).  The Griffiths’ sole issue is overruled.

 

Conclusion

            We
have held that the Redmons, by their pleadings, have sufficiently demonstrated
standing with regard to their claims for (1) shareholder oppression, (2) breach
of fiduciary duty by way of shareholder oppression, (3) wrongful termination of
their employment within the confines of their shareholder oppression claim, (4)
constructive fraud to the extent the claim has not been rendered moot, and (5)
fraudulent transfer of the Griffiths’ individual assets to the R.E. and Valta
Griffith Living Revocable Trust.  In this
regard, the Redmons’ first issue is sustained. 
We have further held that the trial court correctly determined that the
Redmons did not have standing with regard to their claims for (1) breach of
fiduciary duty owed by the Griffiths to G.E.M. and (2) breach of contract that
the Redmons allegedly had with G.E.M.  In
this regard, the Redmons’ first issue is overruled.  We have also held that the trial court
incorrectly granted summary judgment on the Redmons’ claim for shareholder
oppression.  Therefore, we sustained the
Redmons’ second issue.  We have further
overruled the Griffiths’ sole issue.

            We
reverse the trial court’s judgment in part and remand
the portions of this cause concerning (1) shareholder oppression, (2) breach of
fiduciary duty by way of shareholder oppression, (3) breach of contract within
the confines of the Redmons’ shareholder oppression claim, (4) constructive
fraud to the extent the claim has not been rendered moot, and (5) fraudulent
transfer of the Griffiths’ individual assets to the R.E. and Valta Griffith
Living Revocable Trust for further proceedings consistent with this
opinion.  We affirm the
remainder of the trial court’s judgment.

 

 

 

                                                                                                    DIANE DEVASTO   

                                                                                                                 Justice

 

 

Opinion
delivered April 5, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

(PUBLISH)











[1]
Also named as a defendant in this matter is the R.E. and Valta Griffith Living
Revocable Trust.





[2]
Jim Redmon retained his position as a director of G.E.M.





[3]
We note that a no evidence motion is properly granted if the nonmovant fails to
bring forth more than a scintilla of probative evidence to raise a genuine
issue of material fact as to an essential element of the nonmovant’s
claim on which the nonmovant would have the burden of proof at trial.  See Havner, 953 S.W.2d
at 711.  Because any one of a variety of activities
or conduct can give rise to shareholder oppression, the fact that there may be
a lack of evidence to support the existence of one such activity does not
defeat the claim so long as there is evidence to support that another such
instance of conduct occurred. 





[4]
The Redmons have raised other claims such as breach of fiduciary duty, breach
of contract, and fraud.  While the
shareholder oppression claim may be based on the same underlying facts, we have
analyzed the other claims separately from it.





[5] We do not reach the issue of whether other
allegations of wrongdoing potentially underlying the Redmons’ shareholder
oppression claim have sufficient evidentiary support in the summary judgment
record.  See n.3.





[6]
The existence of a confidential or fiduciary relationship is ordinarily a
question of fact, and the issue only becomes a question of law when it is one
of no evidence. Crim Truck & Tractor Co. v. Navistar Int'l Transp.
Corp., 823 S.W.2d 591, 594 (Tex. 1992).





[7]
A confidential relationship exists where influence has been acquired and abused
and confidence has been reposed and betrayed. Navistar Int'l Transp.
Corp., 823 S.W.2d at 594. A person is justified in placing confidence
in the belief that another party will act in his or her best interest only
where he or she is accustomed to being guided by the judgment or advice of the
other party and there exists a long association in a business relationship, as
well as personal friendship.  Dominguez
v. Brackey Enters., Inc., 756 S.W.2d 788, 791-92 (Tex. App.–El Paso
1988, writ denied).  However, the fact
that the relationship has been a cordial one and of long duration does not
necessarily constitute a confidential relationship. Navistar Int'l
Transp. Corp., 823 S.W.2d at 594; Hallmark v. Port/Cooper T.
Smith Stevedoring Co., 907 S.W.2d 586, 592 (Tex. App.–Corpus Christi
1995, no writ). 





[8]
The Redmons argue in their reply brief that G.E.M. was a close corporation as
defined by Texas Business Corporation Act, art. 5.14(L)(b)(2).  Yet the definition contained in Article 5.14
is only applicable to a derivative proceeding brought by a shareholder of “a
closely held corporation,” which may be treated by the court as a direct action
brought by the shareholder for his own benefit. 
See Tex. Bus. Corp. Act art.
5.14(L)(b)(2) (Vernon 2003).  Because the
definition of a “closely held corporation” in Article 5.14 is limited to that
article, it is inapplicable to circumstances involving the creation of
fiduciary duties between majority and minority shareholders in close
corporations.  Id.  Moreover, Article 5.14(L) indicates that the
trial court possesses discretion in this regard when a shareholder has brought
a derivative proceeding.  Since the
Redmons abandoned their derivative claims and never sought to have the trial
court confer the benefits set forth in Article 5.14(L) upon them, 5.14(L) is
inapplicable and provides them no basis for recovery. 





[9]
Other means of recovery are available for a plaintiff to establish standing to
sue for breach of contract.  See,
e.g., Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d at
618 (subcontractor);  Zuniga v.
Wooster Ladder Co., 119 S.W.3d 856, 862 (Tex. App.–San Antonio 2003, no
pet.) (contracting party has standing to enforce contract on behalf of third
party beneficiary); Perry v. Breland, 16 S.W.3d 182, 187 (Tex.
App.–Eastland 2000, pet. denied (agency relationship);Tex. State
Employees Union v. Tex. Workforce Comm’n, 16 S.W.3d 61, 67–68 (Tex.
App.–Austin 2000, no pet.) (third party beneficiary has standing to enforce
contract because it steps into the shoes of contracting party), disapproved
on other grounds, Tex. Dep’t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 224 n. 4 (Tex. 2004). 
However, in the case at hand, apart from their allegations concerning
shareholder oppression, the Redmons have not alleged facts that would give rise
to standing in such instances.