

# NUMBER 13-07-00621-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BILL E. ART,                                                                               Appellant,

v.

SCHMART ENGINEERING, INC. AND
JENNY SCHMIEDER, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE
OF RICHARD SCHMIEDER, DECEASED,                              Appellees.

On appeal from the 172nd District Court
of Jefferson County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez

Appellant, Bill Art, appeals from a judgment rendered in favor of appellees, SchmArt

Engineering, Inc. ("SchmArt Engineering") and Jenny Schmieder.  In nine issues, Art

challenges various aspects of the trial court's judgment. We reverse and render in part and affirm in part.

## I. BACKGROUND

In 1996, Richard Schmieder and Art formed SchmArt Engineering, a closely held corporation. Richard, president of SchmArt Engineering, owned 51 percent of the company, and Art, vice president of SchmArt Engineering, owned 49 percent of the company. SchmArt Engineering developed engineering software and marketed it to chemical plants along the Gulf Coast. Although SchmArt Engineering was involved in numerous projects throughout the late 1990s, it was plagued by financial difficulties and tax problems. In 2001, Art left SchmArt Engineering and began working for Imes Engineering ("Imes"), another engineering software company.

### A.    Pleadings

In February 2002, Art sued SchmArt Engineering and Richard for negligence, fraud, shareholder oppression, and breach of fiduciary duty. SchmArt Engineering and Richard answered with a general denial, and they asserted cross-claims against Art for, among other things, breach of fiduciary duty, tortious interference with a business relationship, conversion, and civil conspiracy.[1]

On April 18, 2006, the trial court signed an order dismissing the case for want of prosecution because it had been on the trial court's docket for more than 18 months. On April 26, 2006, Art filed an unverified motion to reinstate the case on the ground that he did not intentionally delay the case. *See* TEX. R. CIV. P. 165a(3) ("A motion to reinstate shall set forth the grounds therefor and be verified by the movant or his attorney."). On May 12,

---

[1] SchmArt Engineering and Richard also asserted claims against Imes Engineering ("Imes") for civil conspiracy. Imes, however, was dismissed from the lawsuit before trial.

2006, SchmArt Engineering and Richard responded to the motion and argued that it should be denied because Art did not (1) explain the reason for the delay, (2) verify the motion to reinstate, or (3) assert that he diligently prosecuted the suit. Nevertheless, the trial court reinstated the case on May 12, 2006.[2]

## B.  Testimony

A bench trial was held on June 5, 2007. At trial, Art testified that in 1998 SchmArt Engineering owed payroll taxes, and the IRS subsequently assessed a $150,000 tax lien on the company. As a result of the lien, SchmArt Engineering reduced Art's salary by fifty percent in order to reduce its expenses and repay the taxes that it owed. The reduced salary created a financial hardship for Art, and he borrowed from SchmArt Engineering against his interest in the company—which presumably was permissible despite the tax lien—in order to offset his reduced salary. Art stated that he borrowed $81,348.76 from SchmArt Engineering, and the loan benefitted the enterprise because it allowed him to stay at the company and develop profitable software. Despite the loan, Art filed for bankruptcy in 1999. The trial court admitted, without objection, Art's bankruptcy file. It contained an order, dated March 22, 2002, that disallowed SchmArt Engineering's May 22,2000, claim for $81,348.00 against Art's bankruptcy estate.

In February 2001, Art discussed SchmArt Engineering's financial situation with Richard, and Art tendered a resignation letter to Richard. Art was unemployed for several months after leaving SchmArt Engineering, until he began working for Imes. While at Imes, Art was engaged in engineering work, but he testified that he did not compete against SchmArt Engineering even though his employment with SchmArt Engineering was

---

[2] Richard died on August 9, 2006. The trial court ordered that Jenny, Richard's wife, be substituted as the plaintiff and cross-claimant.

3

not governed by any non-competition or confidentiality agreement.

Art testified that he wanted access to SchmArt Engineering's software because it was the company's only real asset, and he believed that he was entitled to it because Richard mismanaged the company and breached his fiduciary duty to the company. Art further testified that Richard founded SchmArt Technologies, a software design company in Malaysia, and SchmArt Technologies took business opportunities away from SchmArt Engineering. Art believed that SchmArt Engineering's software was worth $1 million. He had heard that two companies, Valski, Inc. and Berwanger, Inc., were interested in purchasing SchmArt Engineering for between $1 and $3.5 million. But, Richard would not sell the company. Art, therefore, wanted the software without any of the tax liabilities because he had "already paid his fair share."

Jenny, SchmArt Engineering's bookkeeper, testified that she was in charge of payroll and paying employee withholding taxes to the IRS. SchmArt Engineering's original withholding tax deficiency was $150,000, but the company's back taxes had grown to over $480,000 because of penalties and interest by the time the IRS placed a lien on SchmArt Engineering's assets. She testified that SchmArt Technologies paid SchmArt Engineering for a license to use its software. Jenny did not believe that Richard had breached his fiduciary duty to SchmArt Engineering. She reasoned that as SchmArt Technologies developed an international market, it would purchase software licenses from SchmArt Engineering, thereby increasing SchmArt Engineering's revenue stream. On the other hand, Jenny claimed that Art's employment with Imes hurt SchmArt Engineering because both companies competed for a similar contract, and Imes was awarded the contract.

Regarding potential buyers, Jenny denied that there were any offers to purchase SchmArt Engineering.

Richard's deposition testimony was read into the record at trial. He was questioned by Art's counsel regarding a $30,000 loan from "Funstuff," and he responded that "[i]t's the Mafia in Baton Rouge. Does that suit you?" According to Richard, Funstuff charged a one hundred percent interest rate for the $30,000 loan, but he agreed to it in order to keep SchmArt Engineering running. He estimated that the software SchmArt Engineering had developed was worth $1 million. Richard also testified that he borrowed $40,000 from SchmArt Engineering in order to purchase a home.

Susan Oliver, SchmArt Engineering's attorney, testified that she had spent over 200 hours on the case at an hourly rate of $150. She claimed that her total bill was for $30,000 and that SchmArt Engineering was entitled to attorney's fees based on its fraud and breach of fiduciary duty claims.

## C. Judgment, Findings of Fact, and Conclusions of Law

On July 9, 2007, the trial court entered a take nothing judgment on Art's claims. However, the trial court found in favor of Jenny on her negligence, fraud, constructive fraud, and fraudulent inducement counter-claims and awarded Jenny $41,487.48 in damages and $30,000 in attorney's fees. Subsequently, on August 29, 2007, the trial court made the following relevant findings of fact:

4. That Bill E. Art borrowed $81,348.00 from Schmart Engineering, Inc. which was not paid back to Schmart Engineering, Inc.

5. That the United States Bankruptcy Court, Western District of Louisiana, Lake Charles Division discharged the debt of $81,348.00

with respect to Schmart Engineering, Inc. in Cause Number 99-20819

. . . .

7.  That Richard Schmieder's claim for $41,487.48, 51% of the $81,348.00, was not discharged by the Bankruptcy Court.

. . . .

9.  That Bill E. Art presented no evidence of any damage from the actions of Defendants.

The court also made the following legal conclusions:

1.  That the bankruptcy case styled Bill E. Art; Case Number 99-20819, the United States Bankruptcy Court, Western District of Louisiana, Lake Charles Division did not list Richard Schmieder as an individual creditor, and did not discharge claims against Bill E. Art brought by Richard Schmieder, individually, and in his stead, in this lawsuit.

2.  That this court finds, as a matter of law, that reasonable and necessary attorney's fees were awarded herein pursuant to Texas Business and Commerce Code § 27.01, the Declaratory Judgment Act, and based upon breach of an oral or written contract, pursuant to Texas [Civil] Practice and Remedies Code § 38.001, Texas Rules of Civil Procedure 215, as well as pursuant to principles of equity.

The judgment itself, however, did not mention the business and commerce code, the declaratory judgment act, a breach of any type of contract, the civil practice and remedies code, or the rules of civil procedure. This appeal ensued.

## II. DISUCSSION

By his first issue, Art contends that the evidence was legally insufficient to support a finding of negligence, fraud, constructive fraud, and fraudulent inducement. In his second and fourth issues, Art argues that the trial court erred in awarding attorney's fees

6

based upon a breach of contract claim, the declaratory judgment statute, fraud in a stock transaction as governed by section 27.01 of the business and commerce code, discovery sanctions under Rule 215 of the Texas Rules of Civil Procedure, and "principles of equity" (collectively referred to as "additional claims") because there is no evidence supporting those claims.

## A.  Standard of Review

In reviewing a legal-sufficiency challenge, we examine the entire record to determine if the proposition contrary to the jury's finding is established as a matter of law, and we will sustain the challenge only in that case.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 & n.16 (Tex. 2005) (citing, among other cases, *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)) (listing four instances in which legal sufficiency challenge must be sustained, as follows: (1) complete absence of vital fact; (2) rules of law or evidence preclude according weight to only evidence offered to prove vital fact; (3) evidence offered to prove vital fact is no more than a scintilla; and (4) evidence conclusively establishes opposite of vital fact).

Findings of fact in a case tried to the court have the same force and effect as a jury's verdict on questions and are reviewable for legal and factual sufficiency under the same standards that govern jury findings.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Min v. Avila*, 991 S.W.2d 495, 500 (Tex. App.–Houston [1st Dist.] 1999, no pet.).  We review the trial court's conclusions of law independently to determine their correctness from the facts found.  *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App.–Houston [1st Dist.] 2001, no pet.); *see In re K.R.P.*, 80 S.W.3d 669, 674

(Tex. App.–Houston [1st Dist.] 2002, pet. denied) (stating that trial court's legal conclusions are not binding on appellate court and are reviewable de novo).

In applying the legal-sufficiency standard, we must credit evidence that supports the judgment if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. Accordingly, we review the evidence in the light most favorable to the verdict, but disregard all contrary evidence that a reasonable jury could have disbelieved. *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (citing *City of Keller*, 168 S.W.3d at 812). If the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of the trial judge, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *See City of Keller*, 168 S.W.3d at 822.

## B.  Claims for Negligence and Fraud

Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex. App.–Tyler 2004, pet. denied) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311(Tex. 1987)).

The elements of a common-law fraud claim are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the

party suffered injury." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998). Fraudulent inducement claims include fraud elements in addition to proof that one entered into a binding agreement as a result of the misrepresentation. *See Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001) (providing that "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.").

Art argues that Richard's claims for negligence and fraud are premised on an alleged breach of his fiduciary duty to SchmArt Engineering. Art further argues that Richard could not individually assert his claims because a breach of fiduciary claim belongs to a corporation rather than a shareholder. *See Faour v. Faour*, 789 S.W.2d 620, 622 (Tex. App.–Texarkana 1990, writ denied) (citing *Commonwealth of Mass. v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942)) ("A corporate shareholder has no individual cause of action for personal damages caused solely by wrong done to the corporation.").

Regardless of whether Richard's claims can be properly characterized as a breach of fiduciary claim, there is no evidence in the record to support a finding of negligence because there is no evidence of any legal duty that Art owed to Richard.[3] *See Critchfield*, 151 S.W.3d at 230. There is also no evidence of fraud because there is no evidence that Richard acted on any misrepresentation that Art may have made. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 524.

---

[3] We also note that there is no evidence of a coshareholder duty between Richard and Art. A coshareholder in a closely held corporation does not as a matter of law owe a fiduciary duty to his coshareholder. *Redmon v. Griffith*, 202 S.W.3d 225, 237 (Tex. App–Tyler 2006, pet. denied). Instead, the existence of such a duty depends on the circumstances. *Id*. For example, a fiduciary duty exists if a confidential relationship exists. *Id.* The record in this case does not evidence any confidential relationship between Art and Richard.

Art's first issue is sustained.

## C.    Additional Claims as the Basis for Attorney's Fees

Art argues that the trial court could not award attorney's fees because there was no evidence support any claims that would justify such an award.  We agree.

The trial court based its award of attorney's fees on the additional claims; however, it did not find in Richard's favor on any of those claims.  In the judgment, the trial court found that Art had committed negligence and fraud.  The trial court's relevant legal conclusion reads:[4]

> That this court finds, as a matter of law, that reasonable and necessary attorney's fees were awarded herein pursuant to Texas Business and Commerce Code § 27.01, the Declaratory Judgment Act, and based upon breach of an oral or written contract, pursuant to Texas [Civil] Practice and Remedies Code § 38.001, Texas Rules of Civil Procedure 215, as well as pursuant to principles of equity.

Nowhere in the findings of fact and conclusions of law did the trial court find that Art: (1) violated section 27.01 of the business and commerce code, s*ee* TEX. BUS. & COM. CODE ANN. § 27.01(e) (Vernon 2002) ("*Any person who violates the provisions* of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees. . . .") (emphasis added); (2) breached an oral or written contract, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, *in addition to the amount of a valid claim* and costs, if the claim is for an oral or written contract") (emphasis added); or (3) abused the discovery process, *see* TEX. R. CIV. P. 215.

_____

[4] We note that the additional claims are found only in the conclusions of law.  However, findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them and the judgment.  *Zorilla v. Wahid*, 83 S.W.3d 247, 254 (Tex. App.–Corpus Christi 2002, no pet.)

Moreover, the record does not contain any basis for a declaratory judgment. Under the civil practice and remedies code, "[a] person interested under a deed, will, written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 1997). Jenny offered two exhibits that were admitted during trial: Art's resignation letter and a list of salaries paid to Art's and Richard's family members and alleged liabilities of Art, Richard, and SchmArt Engineering. Art's exhibits consisted primarily of SchmArt Engineering invoices, a notice of the IRS tax lein, and his bankruptcy file. Thus, the record does not contain any written contract between Art and Richard. Moreover, none of the testimony alludes to any oral contract between Art and Richard and Jenny. We, therefore, are at a loss as to how the trial court could have issued a declaratory judgment, if it did so at all.

As a final possible ground for awarding attorney's fees, the trial court concluded that Richard was entitled to attorney's fees under "principles of equity." With few exceptions, a party cannot recover attorney's fees unless permitted by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Neither the record nor the trial court's disposition provide any justification for the exceptions to the general rule regarding attorney's fees. *See generally Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 799 (Tex. 1974) (explaining how the "common fund" doctrine relates to attorney's fees).

Art's second and fourth issues are sustained.

**D.    Art's Claims**

11

By his ninth issue, Art contends that the trial court erred in denying the relief that he sought. We construe this issue to be a challenge to the factual sufficiency of the evidence underlying the trial court's finding that "Bill E. Art presented no evidence of any damage from the actions of Defendants." In reviewing for factual sufficiency, we are to set aside the finding "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curium). Having reviewed the entire record, we cannot say that the trial court's finding is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. Art's ninth issue is overruled.

## III. Conclusion

The judgment against Art for $41,487.48 in damages and $30,000 in attorney's fees is reversed and a take nothing judgment is rendered, and the take nothing judgment against Art is affirmed.[5]

_____
ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and
filed this the 9th day of October, 2008.

_____

[5] We need not address Art's remaining issues, as they would not further affect the outcome of this appeal. *See* TEX. R. APP. P. 47.1.